CASE 70—NEGLIGENCE—DECEMBER 13, 1884.

# Louisville Gas Co. v. Gutenkuntz, &c.

APPEAL FROM JEFFERSON CIRCUIT COURT.

Appellant, the Louisville Gas Company, sent its agent with directions to turn off the gas from appellees' premises. By means of a key he proceeded to do so, but in such manner as that when appellee's wife went into the cellar of the building with a lighted candle, an explosion occurred which burned her so badly as to endanger her life.

1. *Held*—The wife was not guilty of contributory negligence in attempting to enter the cellar. This she had the right to do.

2. The negligent act of the company's agent was the proximate and necessary cause of the injury, and the company is properly held bound for his negligence.

3. The agent was guilty of the grossest negligence in discharging his duty, and his employers are properly held bound in damages to appellees therefor.

4. The principal is bound for the carelessness or negligence of his agent in the discharge of his duty.

GOODLOE & ROBERTS AND WM. LINDSAY FOR APPELLANT.

1. The preponderance of the proof shows that the employe had turned the gas entirely from the house and cellar.

2. The fifth instruction is error. It makes appellant responsible for all injury that may have been caused by any persons who "tampered" with the key. (Landes on Negligence, 7; Smith's Leading Cases, volume 1, 484.)

3. The other instructions are misleading and erroneous. (70 Penn. Stat., 89, 86; 8 Harris, 171; 10 Wright, 192; 11 East, 60; Federal Reporter, 591; Barry v. Smith, L. R. Com. Pleas, volume 4, 325; Bartlett v.

Louisville Gas Co. v. Gutenkuntz, &c.

Boston Gas-light Co., 122 Mass; Robinson v. Webb, 12 Bush, 464; 110 Mass., 348.)

BROWN & DAVIE, A. BAKER AND W. R. KINNEY FOR APPEL-LEES.

It is a settled rule that where one unlawfully or negligently leaves a dangerous instrument in a public place where it is liable to cause an injury, the fact that the immediate cause of the accident was the intervening act of a third person, does not prevent the persons injured from recovering from the persons who left the dangerous thing there. (Thompson on Negligences, volume 2. 1088, 1089, 1090; Burrows v. March Gas Co., 5 Exchequer, 67; 106 Mass., 458; Law Rep., 8 Queen's Bench Div., 377; 4 British Law Rep.; 4 Com. Pleas Div., 325; 2 Met., 122; 2 Bl. Rep., 891; 5 M. & L., 198; 5 Carr & Payne, 192; 8 Dana, 43; 9 Dana, 195; 122 Mass., 218; 13 Bush, 407; 14 Ib., 485; 78 Ky., 475; 11 Bush, 512.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The appellees, Gutenkuntz and wife, obtained a judgment in the Jefferson Court of Common Pleas against the Louisville Gas Company for the sum of $5,000 for an injury to the wife, caused by an explosion of gas resulting from the negligence of the agent of the company. That judgment is the subject of revision in this court.

The appellees were the owners of a house in which they resided, on Market street, in the city of Louisville, and had been using the gas of the company for several years, having gas-pipes leading through most if not all the rooms of the dwelling.

In December, 1881, they desired to stop the use of gas, and directed the company to shut it off from the house. The gas passed from the main pipe on the street through what is called the service pipe into the meter placed in a cellar of the dwelling, and thence by means of pipes to the various rooms of the house.

The gas is closed off by means of a long key several.

.feet long inserted in a box attached to the service pipe, and so arranged that in turning the key it stops the flow of gas entirely, and removes all danger of an explosion.

An employe of the company came to the house in December, 1881, about 3 o'clock in the evening, and, :as he says, by means of the key, turned off the gas, and then proceeded with a lighted candle to the cellar, found that the gas had ceased to flow, unscrewed the connecting pipes from the meter, taking the meter out of the cellar and placing it in his wagon. He then left, going to some other part of the city ; and, finding that he had left the key *in the box* on the street where he turned the gas off, returned in about ten minutes, took the key out and carried it with him.

The agent states that he is confident the flow of gas into the cellar was entirely stopped by him, and equally as confident that he did not turn the gas on when taking the key out, and, from his theory of this case, as well as that relied on by the appellant, some one, during this period of ten minutes, had been tampering with the key, and let the gas on.

A small boy, the son of the injured woman, says that he accompanied the employe of the appellant into the cellar. That he had no candle, and while there, smelling the gas strongly, he made some remark about it, when the employe of the company replied that it was gas escaping from the pipes that led through the house, and was the natural result when removing the meter. This conversation the employe of the company denies, and says that he had a lighted candle, and applied it to see if the flow of gas had been checked.

At 7 o'clock of the same evening, or perhaps later, the appellee, Mrs. Gutenkuntz, finding the smell of gas in her room exceedingly unpleasant, and thinking, as she says, that it was the gas that had escaped from the pipes into the cellar, after the meter had been removed, took a lighted candle to the cellar door, with a view of opening the door and ventilating the cellar, which being filled with gas, an explosion took place that lifted her from the ground, throwing her into the cellar, and burning her face, neck and arms in a horrible manner. She suffered for weeks with the skin and flesh sloughing off her arms, and finally recovered.

The weight of the testimony conduces, perhaps, to show that she is not seriously injured, except the appearance of a cicatrice on her arm, that produces much pain, and, from the testimony of her attending physician, will follow her to her grave.

There is no evidence in the case conducing to show that any member of appellees' family, or any one in their employ, had tampered with this key, so negligently left by its employer in the box on the street, but counsel for the company, assuming that the testimony of Jones, as to his stopping the flow of gas, is true, also assumes that some responsible person, during the interval of ten minutes, the period intervening between Jones' departure from the house and his return after the key, had turned on the gas, causing the injury to the plaintiff, and, therefore, no recovery can be had against the company, but the remedy is against this *phantom* appearing on the ground and using this key in Jones' absence.

There is no testimony that any one, responsible or

irresponsible, touched the key after it had been placed in the box by Jones, and the presumption only can be indulged that some one else than Jones must have handled this key in his absence, if his testimony is to be believed.

On this theory of the case, counsel for the company asked the court to give this instruction : "If the jury believed, from the evidence, that the defendant turned the gas off from the plaintiff's house and cellar, and that afterwards it was turned on by some one not under the control of the defendant, and without the knowledge or consent of the defendant, and that plaintiff, Magdalena, caused the liberated gas to explode, by placing a lighted candle in contact therewith, and the injury complained of was caused by such explosion, they must find for the defendant."

This instruction the court refused to give, and we think properly.

It is conceded on the part of counsel for the company that its agent was guilty of negligence, in leaving the key in the box, but that such negligence ought not to make the appellant liable for all injuries that might result from this act of its agent, unless it was the proximate cause of the injury.

The fifth instruction given by the court, at the instance of the plaintiff, tells the jury "that although the flow of gas may have been caused by some other person, still it did not relieve the defendant from the negligence of its employe."

We understand from this instruction that it includes an intelligent and responsible agency meddling with this key after the employe of the company had left it,.

and, notwithstanding the responsibility of the intervening agency, the company is also responsible.

The general rule, cited by counsel for appellant, is: "Whoever does an illegal or wrongful act is answerable for all the consequences that ensue in the ordinary and natural course of events, even though those consequences be brought about by the intervening agency of others, provided the intervening agents were set in motion by the primary wrong-doer, or provided those acts causing the damages were the necessary or legal and natural consequences of the original wrongful act." (Saunders on Negligence.)

It is endeavored to be maintained that under this rule the negligent act of the company's agent was not the proximate cause of the injury, and that the accident was neither the necessary or natural consequence of the negligent conduct of the agent.

This question is propounded to the court in the brief of counsel in illustration of the position assumed in this case: "Suppose some one passing on the street had pulled the key out of the box and struck a bystander with it, thereby inflicting a severe wound. Would the gas company have to respond in damages because its agent had committed an act of negligence in leaving the key on the sidewalk? Why not? If the key had not been carelessly left by its agent, the party injured would not have been wounded with it."

There is no analogy between the supposed case and the one under consideration. Here it was the duty of the company, through its agent, to remove the meter from the cellar of the plaintiff, and, in doing so, to exercise such care as one of ordinary prudence and

judgment in the discharge of such a duty would be required to exercise for the safety of the dwelling and the family from this explosive substance. This duty he partially performed, but left the key in the box on a street of the city exposed to the handling of those in passing by, whether from motives of curiosity or from a desire to injure others, when the movement of the key in the one direction or the other would start the flow of gas into plaintiffs' cellar.

The handling of the key by others, when left in such an exposed condition, was the ordinary and natural result of the negligent act, and that fact any man of ordinary judgment should have foreseen.

While the agent might have left the key on the sidewalk or in the box, it could hardly be supposed or even anticipated that it would be used as a weapon in inflicting bodily injury upon those passing; but he ought to have known and anticipated the danger that would result from leaving the key in the box, when the slightest movement of it would have turned the gas on. The negligent or willful act of the stranger in striking a by-stander was not such a result as the agent of the company had the right to anticipate, "but an intervening act of an independent, voluntary agent does not relieve the party doing the first wrong from the consequences of his wrong, if such intervening act was one which would ordinarily be expected to flow from the act of the first wrong-doer." (Thompson on Negligence, note 6, page 1089.)

Various illustrations of this rule are given in the elementary books on the subject, as well as in reported cases. If the agent had lost the key from his wagon,

or even left it on the sidewalk of the street, and it had been picked up by a passer-by, who had taken it to this box on the street and let on the gas, it would not have been such negligence as would have made the company responsible. The key in itself was harmless, and there would have been no reason to expect that it would have been taken and used for such a wicked purpose.

But every one should be held responsible for his unlawful acts or their consequences, when, by the exercise of an ordinary judgment, he could have foreseen the danger. Here the key was not only left on the public street, but in a position in the box where handling it at all made the danger inevitable. It was negligence of the grossest character, and the result could have been looked for by any reasonable being.

This branch of the case is discussed on the idea that some one else than the agent tampered with the key, when there is no evidence to support it, and when it is apparent that the agent in withdrawing the key, in his haste to return, turned the gas on. There is no escape from this conclusion, and it is the only reasonable solution of the issue of fact in this case.

He doubtless turned the gas off before going into the cellar, and tested that fact by applying his candle to the pipe, and when leaving felt that he had discharged his duty. He was gone only ten minutes, when he returned, took the key from its place in the box, and soon the cellar was filled with gas; still it is insisted that the jury had the right to find that some responsible intervening agent, unknown to them, committed this wrong, and for that reason the company is not responsible.

The recovery in this case was permitted for the rea-son that the agent of the defendant undertook, at plaintiffs' instance, to shut off the gas from the house of the plaintiffs, and in so doing left the gas-pipes in such a condition as to cause the gas to continue to flow and fill plaintiffs' cellar, resulting in the injury com-plained of. The instructions are given on this theory, and whether the agent of the company turned the gas on, or some one else, is immaterial. The instructions were proper and embraced the law of the case.

It is insisted that instruction number three, for the plaintiffs, is improper, because the word *recklessly* is used. The court told the jury that if the plaintiff, knowing the dangerous and explosive character of gas, and that the cellar was filled therewith, *recklessly* pro-ceeded to enter the same with a lighted candle, and thereby caused the explosion, the defendant is not liable.

This instruction was at best abstract, and without any evidence to sustain it, except the mere fact that on smelling the gas, the appellee went to the cellar with a view of ventilating it, supposing that the gas was escaping from the pipes in the house.

Besides, the court, in giving instruction number seven, for the defendant, said to the jury: "If, from the evi-dence, they believed that the plaintiff, Magdalena, could, by the exercise of reasonable and ordinary care, that is, by the exercise of that care and prudence, which a per-son of ordinary prudence would have reasonably exer-cised, under such circumstances, have avoided the effects of defendant's negligence, their verdict should be for the defendant."

This instruction must have removed any doubt on the .minds of the jury as to what constituted contributory neglect, and when there is no proof to sustain either the instruction given for the plaintiffs or that for the defendant on this branch of the case, no harm could have resulted in giving them, even if objectionable. We have read the testimony carefully, as we find it embodied in the record, and the only question really presented is as to the *quantum* of damages. There is no defense presented ; no testimony that any one else than the defendant's agent caused the injury, and no proof of contributory neglect.

The testimony authorized the verdict for the plaintiffs, and that the damages are excessive is neither assigned as an error in this court, nor as a ground for a new trial in the court below. But, giving to the defense the full benefit of this alleged error, when looking to the testimony, we are not prepared to say that the damages are . excessive. There is proof conducing to show injuries of a permanent character to the appellee, and by reason of such negligence on the part of its agent as was inexcusable.

Judgment affirmed.