[L. A. No. 2414.   Department Two.—October 19, 1910.]

## F. H. MERRILL, Respondent, v. LOS ANGELES GAS AND ELECTRIC COMPANY (a Corporation), Appellant.

NEGLIGENCE—EXPLOSION OF GAS—SPECIAL INTERROGATORIES FOR JURY—PROXIMATE CAUSE.—In an action against a gas company to recover damages caused by an explosion of gas, it is not error to refuse to submit to the jury a special interrogatory as to whether or not a particular cause was the sole proximate cause of the explosion, where the interrogatory "What was the proximate cause of the explosion?" was submitted to them, and they answered it, "Escaping gas through negligence of the defendant."

ID.—WHAT CONSTITUTES PROXIMATE CAUSE—INDEPENDENT WRONGFUL ACT.—An independent wrongful act, to constitute the proximate cause of an injury, by displacing the original primary cause, must be so disconnected in time and nature as to make it plain that the damage occasioned was in no way a natural or probable consequence of the original wrongful act or omission.

ID.—ORIGINAL ACT OF NEGLIGENCE.—The original act of negligence, the primary causation, may be in its nature so continuous that the concurrent wrongful act precipitating the disaster will in law be regarded not as independent, but as conjoined with the original act to create the disastrous result.

ID.—JOINT NEGLIGENT ACT CAUSING EXPLOSION.—Where an explosion of gas causing damage to a patron of a restaurant results from the

joint negligence of the gas company in discovering and repairing a leak in its pipes, and of the restaurateur in bringing a light in contact with the gas, whereby it explodes, the person damaged may recover from either or both at his election. Each is and both are the proximate cause of the injury.

ID.—MEASURE OF DAMAGES—INSTRUCTIONS—SUFFERING "BECAUSE OF" INJURY.—In an action to recover damages for personal injuries caused by negligence of the defendant, an instruction on the subject of the measure of damages, to the effect that the plaintiff might recover for the "physical and mental suffering he has sustained *because* of the injury," is not rendered erroneous from the use of the phrase "because of," instead of the phrase "caused by" the injury.

ID.—MENTAL SUFFERING NOT CONFINED TO PHYSICAL PAIN.—In such an action, the grief, anxiety, worry, mortification, and humiliation which the injured party suffers by reason of his physical injuries are component parts of the "mental suffering" for which damages may be awarded. The "mental suffering" for which a recovery may be had is not limited to that form of mental suffering described as physical pain.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Walter Bordwell, Judge.

The facts are stated in the opinion of the court.

Wm. A. Cheney, Gibson, Trask, Dunn & Crutcher, Lawler, Allen, Van Dyke & Jutten, and Le Roy M. Edwards, for Appellant.

Ernest E. Wood, for Respondent.

HENSHAW, J.—This action was brought to recover damages for injuries sustained by plaintiff through defendant's alleged negligence. The charge of negligence is that defendant, engaged in the business of supplying gas, while so supplying a restaurant in the city of Los Angeles, negligently and carelessly permitted gas to escape from its pipes and collect in and about the building, and negligently and carelessly caused this gas to explode with great force and violence, whereby were inflicted upon the plaintiff the injuries complained of. The answer was a general denial of negligence. A trial was had before a jury and a verdict rendered for plaintiff in the sum of ten thousand dollars. Judgment fol-

lowed the verdict. Upon motion for new trial the court made its order that it would grant the same unless plaintiff filed a written consent to a reduction of the judgment to the sum of $8,555. This plaintiff did, and from the judgment so modified and from the court's order refusing to grant its motion for a new trial defendant appeals.

The facts in brief are these: on arriving at his restaurant at about 6 o'clock of the morning of the explosion, Cressaty, the proprietor, noticed the smell of gas, and telephoned to defendant's office that gas was escaping and that he wished it attended to immediately. Nobody coming, he telephoned again at half past seven, saying that the odor was much stronger and that there was a dangerous leak. At 8 o'clock he telephoned again for the superintendent.

"I called the gas company many times and asked for the complaint department and asked them to send some one to attend to that leak on the gas, and he said 'all right' and he would go and do his best to send some one at once. I told him the leak was very dangerous and the smell was getting stronger. At 9 o'clock my cashier telephoned and told him there was a strong smell of gas and send some one right away. No one telephoned after 9 o'clock. I employed a plumber to shut off the gas. He came and shut off the meter between 8 and 9 o'clock, but that didn't stop the flow of gas." Defendant's foreman of the mechanical and complaint department testified that he was first notified of the leak at Cressaty's at about 10:40 in the morning. No one had informed him about it before that time; if he had known he would have sent a man to repair it. The foreman sent two men to the place and shortly after followed them. He reached there about five minutes of eleven, without tools. Neither of the other men had tools. They told the foreman that the service pipe was broken, that the leak was under the floor and that the gas was gushing out with a sizzling noise. The foreman sent one of the men back to the office for a flash light and tools with which to saw the flooring, for the leak was in a dark corner of the basement and the foreman was afraid to chop up the floor with a hatchet lest, striking a nail, he might produce a spark, causing an explosion. The foreman gave directions to Cressaty to extinguish all lights in the restaurant, and Cressaty said "all right." One of the men remarked that he had given Cressaty the same

directions before.   The foreman and one employee went across the street to lunch while the third went for the tools.   None of them took pains to see whether the directions to extinguish the lights had been carried out, although all knew that gas was escaping in large and dangerous quantities.   There was fire in the range, and a flame was burning under a large coffee urn.   When the man came back with the flash light and tools, the foreman handed the flash light to Holderman, the other employee, and told him to proceed.   Holderman was about ten feet in advance as they walked toward the location when the explosion occurred.   Plaintiff had entered the restaurant for his lunch and was just about to sit down when the shock came.   Both his legs were bruised and broken at the ankle, his knees injured, his side bruised, his eye and nose cut.   Abscesses formed.   It was six months before he could walk with crutches.   At the time of the trial he was still visibly suffering from the injuries.

Two propositions are advanced upon the appeal:  The first, that the court erred in refusing to submit to the jury certain special issues requested by defendant.   Second, that the court erred in an instruction which it gave.

1. The particular interrogatories requested by defendant, which the court refused to submit, are as follows:—

"1. As soon as defendant's servants arrived at Cressaty's cafe, did they notify Mr. Cressaty to put out all lights and fires?

"2. Did Mr. Cressaty put out all lights and fires?

"3. Was there an open fire burning in Mr. Cressaty's cafe from the time the defendant's servants first arrived at said restaurant up to the time of the explosion?

"4. If you answer the last question affirmatively, was the sole proximate cause of the explosion the fact that an open fire was kept burning in the kitchen of Mr. Cressaty's cafe?

"5. If you answer the last question in the negative, what was the proximate cause of the explosion?"

Appellant's contention in this regard is that notwithstanding it may have been negligent, if the jury in answer to its proposed interrogatory had declared that the sole proximate cause of the explosion was an open fire kept burning in the kitchen of Cressaty's cafe, such answer would have exonerated it from liability.   But there are two complete answers to this.   The

first is that to the jury was submitted the interrogatory "What was the proximate cause of the explosion?" and they answered it "Escaping gas through negligence of the defendant." The interrogatory which the court did thus submit was fair and full. It was in no way suggestive, as most obviously are defendant's proposed interrogatories 3 and 4. Moreover, the proximate cause of the law is not the proximate cause of the logician, nor even always in strictness the proximate cause in fact, and a jury may easily be confused and misled by over-niceties in these abstractions. In actions involving negligence, when the law regards the proximate cause, it is always in reference to the person producing it. When the logician is considering the proximate cause, he has in contemplation the moving influence itself, and not at all the person by whom the impetus was given. Thus, if an explosion should occur upon a vessel, forcing open its seams and admitting sea water which damaged goods, the law having regard, as has been said, to the person, would declare the explosion to have been the proximate cause, and the person causing it, if culpable, to be liable in damages for the goods injured by the water. But, to the logician the proximate cause, the *causa causans,* of the damage to the goods would be sea water. The cause of the admission of the sea water would be the forcing apart of the ship's seams, and the cause of forcing apart the ship's seams would be the explosion. So that, to him, the explosion would be the cause third removed, and it, with the second cause, would be *causa causae causantis.* The legal concept of the proximate cause is quite distinct. It is based on the principle that consequences which follow from the original wrong in unbroken sequence, without an intervening sufficient independent cause, are natural and proximate and for these the original wrongdoer is responsible. (Wells Poll. Torts, 36.) We are not unmindful of the rule expressed by Judge Ray in "Negligence of Imposed Duties to Passengers," (669, 670) a rule which he states in the following language: "Where the concurring cause is the independent wrongful act of a responsible person, such act arrests causation, being regarded as the proximate cause of the injury; the original negligence being considered merely as its remote cause. As in the law it is the proximate and not the remote cause which is regarded, he who is guilty of the original negligence is not chargeable but redress must be sought from him

who directly causes the injury." But unless the rule as stated be taken with one or two very important modifications, it is not justified by the law. One of these modifications is that the original wrongdoer is not relieved, that the proximate causation is not always arrested by the intervention of an independent concurring cause, whether that independent concurring cause may be classified as an act of God, or the wrongful act of a third person. If, to illustrate, a railroad company negligently left a car of dynamite within a city and at a place prohibited by law, and by the explosion of the car injury was occasioned, "causation would not be arrested" and the railroad company relieved from liability, whether the explosion was occasioned by a stroke of lightning or by the act of some wrongdoer making a target of the car for rifle practice. The cases serve to illustrate the true rule, which is that the independent wrongful act, to constitute the proximate cause by displacing the original primary cause, must be so disconnected in time and nature as to make it plain that the damage occasioned was in no way a natural or probable consequence of the original wrongful act or omission. Thus, a car carrying crude petroleum had no valve regulating the outflow of the oil. This was negligence chargeable to the consignor. The consignee, with the knowledge that the car was leaking, attempted to draw off the oil near the plaintiff's mill, the engine room of which mill was lower than the railroad track. In the absence of a valve to control the flow, the oil ran out so rapidly that it reached plaintiff's engine room, exploded, and destroyed the mill. It was held that the defendant consignor was not liable therefor, in that the injury was not a natural or probable consequence of the original negligent act in sending out the oil car without a suitable control valve. (*Goodlander Mill Co.* v. *Standard Oil Co.*, 63 Fed. 400, [11 C. C. A. 253].) So in *Lockridge* v. *Fesler*, (Ky.) 37 S. W. 65, where plaintiff had consigned his horse for keeping to a livery stable, the horse being improperly tied, escaped through the door of the stable to the public street, where it fell and killed itself. The defendant sought to prove that notwithstanding the horse might have been negligently fastened and by reason of the negligence have so escaped to the street, yet that its death was occasioned through fright caused by the noise and hullabaloo made by persons on the street. It was held error to refuse to admit the

testimony, since, if it were believed by the jury, it would establish that the injury was occasioned by an intervening, independent, and sufficient wrongful cause. But upon the other hand, in such cases as *Pastene* v. *Adams,* 49 Cal. 87, and numerous cases hereinafter to be referred to enunciating the same principle, the concurring cause was not regarded as so independent in character as to relieve the first wrongdoer from responsibility. *Pastene* v. *Adams* was an action brought to recover damages caused by the falling of lumber carelessly piled by the defendant a long time before the injury. It was urged by the defendant that the lumber was caused to fall by the negligence of a stranger. It was held that this did not constitute a defense, for the negligence of the defendant merely concurred with the negligence of the stranger, and together they constituted the direct primary cause. And, so, Judge Ray's definition is not to be accepted in its fulness, nor to be accepted at all, without the important further modification that the original act of negligence, the primary causation, may be in its nature so continuous that the concurrent wrongful act precipitating the disaster will in law be regarded not as independent, but as conjoining with the original act to create the disastrous result. And this brings us to the second answer to appellant's proposition.

The second answer is that if these interrogatories had been submitted, and the jury in answer to them had found that the sole proximate cause was the ignition of the gas by a fire in the restaurant, this finding, under the circumstances of this case, would not have controlled a general verdict favorable to plaintiff. We say under the circumstances of this case, because here admittedly the plaintiff was but a patron of the restaurant, owing no duty to either the gas company or the restaurant keeper, and not charged with negligence in any respect so far as the explosion is concerned. A very different case would be that presented were the restaurateur himself suing for damages and the answer of the gas company charged him with negligence in failing to extinguish the lights in his house upon its demand. In such a case the proposed interrogatories would be pertinent and proper, not for the purpose of establishing that the fire was the sole proximate cause of the explosion (for except in the logician's sense and not within the meaning of the law this could not be), but for the purpose

of showing that there was concurrent negligence upon the part
of the plaintiff and that he should be forbidden a recovery
under the maxim which denies one the right to take advantage
of his own wrong. But saving in such cases, and this is not
one of them, the English as well as the American rule of de-
cision is uniform to the effect that where an explosion of gas
causing damage to a person results from the joint negligence
of the gas company in discovering and repairing a leak in its
pipes and of another in bringing a light in contact with the gas,
whereby it explodes, a person damaged may recover from either
or both at his election. Each is and both are the proximate
cause of the injury. (Shearman & Redfield on Negligence, 3d
ed., sec. 338a; 14 Am. & Eng. Ency. of Law, p. 938; 20 Cyc., p.
1170, and the cases there collated.) *Haley* v. *Jump River Lum-
ber Co.,* 81 Wis. 412, [51 N. W. 321, 956], relied on by appel-
lant, is not at variance with this reasoning, nor in conflict with
these authorities. There a workman was injured upon a log-
ging train owned by defendant. The accident occurred by the
breaking of a chain and the falling off of logs on one of the
cars. These cars were loaded by an independent contractor.
Special interrogatories were submitted to the jury touching the
negligence of defendant. It was possible, in the view of the
supreme court of Wisconsin, that the accident might have oc-
curred singly and solely by reason of the negligence of the
independent contractor in loading the cars, and it was held
error to refuse special interrogatories covering this point. In
the case which we have under consideration, however, it is
indisputable that the negligent act of Cressaty in permitting
his lights to burn, conceding such to be the fact and conceding
further that such burning of the lights actually ignited the gas
which exploded, constituted but one of two concurrent causes
of the accident. The legal result of the jury so finding could
not have been to relieve the defendant company from liability,
but merely to declare that the company and Cressaty were
joint tort-feasors. (*Pastene* v. *Adams,* 49 Cal. 87; *Barrett* v.
*Southern Pacific Co.,* 91 Cal. 303, [25 Am. St. Rep. 186, 27
Pac. 666]; *Lewis* v. *Terry,* 111 Cal. 45, [52 Am. St. Rep. 146,
43 Pac. 398]; *Muller* v. *Hale,* 138 Cal. 168, [70 Pac. 81]; *Herr*
v. *City of Lebanon,* 149 Pa. 222, [34 Am. St. Rep. 603, 24 Atl.
207].)

2. The court instructed the jury as follows:—

"If, on the other hand, from such consideration and in view of these instructions you should conclude that the plaintiff ought to recover, then you will award him damages in such amount as, in your judgment, will fairly compensate him for the injuries which he has sustained; and in estimating such damages, you may consider what, before the accident, was his health and physical ability, the extent and nature of his wounds, hurts, bruises and broken limbs he received; also the extent to which, if at all, the injuries he received are permanent in their character, as well as the physical suffering *and mental worry* which he has endured or will suffer in the future *because of* the injuries, if any; also the loss, if any, which plaintiff has sustained or will hereafter sustain by reason of abatement of ability to follow business pursuits or engage in business employments as the direct results of the injuries he received. The law prescribes no measure by which such damages can be estimated, but leaves it to the sound discretion of the jury to fix the amount thereof in such sum as, under all the circumstances, may be deemed just and proper. The law does not require that the plaintiff present any direct evidence to show the amount of damages which he has sustained, or the amount of money which would compensate him for the injuries he has received. All that is necessary is to show to the jury the extent of the injuries, and then it is for the jury to determine, in the manner I have indicated, the amount of damages which ought to be awarded. In determining the amount of damages, if any, which should be awarded to the plaintiff as compensation for the injuries he has sustained, you can add nothing by reason of sympathy, nor as punishment for the defendant."

The language of the instruction which is complained of is found in the italicized words. The complaint is two-fold. First, that legally the recovery must be limited to compensation for the physical pain and mental anguish *caused by* the injuries, and that this is very different from a recovery for the physical pain and mental anguish which the plaintiff might have suffered *because of* the injuries. Second, that the instruction permitted a recovery for mental worry entirely disconnected from his physical pain, while the law contemplates a recovery for the physical pain and for the mental anguish or suffering only as a part of or as growing out of that physi-

cal pain.    And it is argued that to tell the jury that plaintiff can recover for mental worry is to tell them that they may give him as damages compensation for such anxiety as he may have undergone, or recompense him for worrying over future inability to work, the possible duration of his injuries, or the thousand other subjects disconnected from his physical pain, over which the average man when idle and injured may brood and grieve.

To trace an injurious distinction from the use of the phrase "because of," instead of the phrase "caused by" is mere logomachy.    Even this court in laying down the rule declares that plaintiff is entitled to a recovery for "the physical and mental suffering he has sustained *by reason of* the injury." (*Malone* v. *Hawley*, 46 Cal. 49.)    If thus "by reason of the injury" is a fair equivalent to "caused by the injury," certainly no just complaint can be lodged against the phrase "physical and mental suffering he has sustained *because of* the injury."

The more important objection to the instruction, however, is that found in the argument of the appellant above adverted to, namely, that the court, by its language, permitted the jury to consider as an element of damage not alone the mental suffering which plaintiff had sustained by reason of his injuries, and growing out of the physical suffering occasioned thereby, but allowed the jury to consider generally the "mental worry" which he had endured and would in the future suffer caused by or because of or by reason of these injuries.    It is said that such worry being remote, speculative, and incapable of anything like exact ascertainment, is not within the contemplation of the law permitting recovery for physical pain and mental suffering.

The courts of the land have divided upon this question and as it is new to this state, it merits somewhat detailed consideration.    The supreme court of Oregon lays down the rule that mental distress or anguish resulting from the realization of physical inability because of the injury to properly care for those dependent on plaintiff for support and education, is not an element of consequential damages to be recovered in an action for personal injuries.    (*Maynard* v. *Oregon R. & N. Co.*, 46 Or. 15, [78 Pac. 983].)    In *Linn* v. *Duquesne Borough*, 204 Pa. 551, [93 Am. St. Rep. 800, 54 Atl. 341], the supreme court of Pennsylvania, perhaps as fully as any other, sets forth the

reasoning of the rule adopted by that court and contended for here by appellant. It is as follows:—

"While in this state it is a well-settled rule of law that damages may be allowed in cases like this, for the pain and anguish of mind caused by the personal injury, yet we are not aware of any case holding that anguish of mind, wholly sentimental, arising from a contemplation of a disfigurement of person, can be considered for the purpose of swelling such damages. The words 'pain and anguish of mind' are used in a popular sense to denote such as may arise from any cause, and are not necessarily restricted to that arising from personal injury. But the legal meaning of such words found in the reports of decided cases in this state, as will plainly appear from their reading, confines such meaning of the words to such pain and anguish of mind as occur necessarily and spontaneously from any injury of or shock to the nerves of sensation or such pain and anguish as remain during the continuance of the original and exciting cause and arising therefrom. But where the injury only comes about by reflection or contemplation, then, in the legal sense, it is not caused by the injury, but arises and is produced by a combination of causes other than the injury."

In *Southern Pacific Co.* v. *Hetzer,* 135 Fed. 274, [66 C. C. A. 26, 28], the court laid down its rule as follows:—

"The rule which has been adopted by this court, however, and the rule which seems to us the better one, is that in actions for personal injury the plaintiff may recover for the bodily suffering and mental pain which are inseparable and which necessarily and inevitably result from the injury. But mortification or distress of mind from the contemplation of the crippled condition and of its effect upon the esteem of his fellows, that mental pain which is separable from the physical suffering caused by the injury, is too remote, indefinite and intangible to constitute an element of the damages in such a case."

Without further multiplying quotations, suffice it to refer to the following cases as either wholly or partially embodying the principle for which appellant contends: *Chicago R. I. & P. Ry. Co.* v. *Caulfield,* 63 Fed. 396, [11 C. C. A. 552]; *Johnson* v. *Wells Fargo & Co. Express,* 6 Nev. 224, [3 Am. Rep. 245]; *Planters' Oil Co.* v. *Mansell,* (Tex. Civ.) 43 S. W. 913; *Indianapolis & St. Louis R. Co.* v. *Stables,* 62 Ill. 313; *Augusta*

*R. Co.* v. *Randall*, 85 Ga. 297, [11 S. E. 706] ; *Giffen* v. *City of Lewiston*, 6 Idaho, 231, [55 Pac. 545] ; *Railroad Co.* v. *Chance*, 57 Kan. 41, [45 Pac. 60], and *Railway* v. *Douglass*, 69 Tex. 694, [7 S. W. 77].

The other view may, in turn, be presented by the following quotations. Thus the supreme court of Washington in *Gray* v. *Washington Water Power Co.*, 30 Wash. 665, [71 Pac. 206], declares:—

"The objection urged to instruction number 9 is that it indorsed the doctrine of compensation for mental suffering and distress of mind for disfigurement. On this subject the authorities are somewhat divided, though the decided weight of authority, we think, is to the effect that compensation can be recovered for such damages. We also think that such damages are sustained by the better reasoning. Some of the cases cited by appellant, while permitting compensation for mental suffering induced by physical pain, distinguish such mental suffering from suffering arising from causes other than physical pain, viz., such suffering as arises from the contemplation of a maimed body or deformed face; and the reason assigned is that this element of damage is too vague and indefinite to be susceptible of proof. But we think this discrimination·cannot be maintained in sound reasoning, and that mental suffering which is induced by the relations of mind and body is as difficult to measure as mental suffering induced by mortification and disfigurement. Not all people suffer equally from the same bodily injury. In practice mental suffering is always an element considered by juries in slander and libel cases, in actions for false imprisonment and breach of promise, and many other cases of their character, and it ought to be. A wound to one's sensibility is none the less painful when one's character is slandered. The law ought not to grant redress alone to the business man who sustains commercial damage and refuse redress to others who have sustained a more poignant affliction. And he who negligently causes injury to another who is faultless, which makes the latter an object of pity and abhorrence to his fellowmen, and an object of ridicule to the thoughtless and unfeeling, and deprives him of the comforts and companionship of his fellows, ought to respond in damages for the injury sustained."

And the supreme court of Wisconsin in *Heddles* v. *Chicago*

*etc. R. R. Co.,* 77 Wis. 288, [20 Am. St. Rep. 106, 46 N. W. 115], declares:—

"The first error assigned is the instructions of the court to the jury on the question of damages. The instruction objected to reads as follows: 'The amount of the damages which you will assess is left to your judgment and discretion, considering the proper elements of damages, which are as follows: Adequate compensation for all of the physical and mental pain and suffering which the plaintiff suffered at the time of the accident, which he has suffered since that time, and which he is reasonably certain to suffer in the future by reason of his injuries; also for the mortification and anguish of mind which he has suffered, and will in the future suffer, by reason of the mutilation of his body, and the fact that he may become an object of curiosity or ridicule among his fellows.' The learned counsel for the appellant take exceptions to the use of the words, 'for the mortification and anguish of mind which he has suffered, and will suffer in the future, by reason of the mutilation of his body, and the fact that he may become an object of curiosity and ridicule among his fellows.' It is urged that these words convey to the jury an idea different from that conveyed by the words 'mental pain and suffering' which resulted from the injury. We think the learned judge only used the expressions excepted to as indicative of the causes from which the mental pain and suffering would be likely to arise from the injury received. There can be no doubt that the loss of the plaintiff's limbs will naturally cause mortification and anguish on the part of the plaintiff, and it is also quite certain that he would be to a considerable extent an object of curiosity, and to the thoughtless and unfeeling an object of ridicule. We think there was no error in the instructions excepted to. For authorities sustaining the instructions, see the following cases cited by counsel for the respondent: *Wilson* v. *Young,* 31 Wis. 574; *Craker* v. *Chicago & N. W. Ry. Co.,* 36 Wis. 657, 677, [17 Am. Rep. 504]; *Power* v. *Harlow,* 57 Mich. 107, [23 N. W. 606]; *The Oriflamme,* 3 Sawy. 397, [Fed. Cas. No. 10,572]; *Atlanta & R. A. L. R. R. Co.* v. *Wood,* 48 Ga. 565; *Toledo W. & W. Ry. Co.* v. *Baddeley,* 54 Ill. 19, [5 Am. Rep. 71]; *Ballou* v. *Farnum,* 11 Allen, (Mass.) 73; *Western & A. R. R. Co.* v. *Young,* 81 Ga. 397, [12 Am. St. Rep. 320, 7 S. E. 912]; *McMahon* v. *Northern etc. R. R. Co.,* 39 Md. 438."

A reference may also be made to Sedgwick on Measure of Damages, p. 31; *Webb* v. *R. R. Co.*, 51 App. Div. 194, [64 N. Y. Supp. 491]; *Sherwood* v. *Chicago R. R. Co.*, 82 Mich. 374, [46 N. W. 776]; *Railway Co.* v. *Dobbins,* 60 Ark. 481, [30 S. W. 887, 31 S. W. 147]; *Schmitz* v. *R. R. Co.*, 119 Mo. 256, [24 S. W. 472]; *Galveston R. R. Co.* v. *Clark,* 23 Tex. App. 167, [51 S. W. 276].

Upon mature consideration of these and other cases we express the views: 1. That the grief, anxiety, worry, mortification, and humiliation which one suffers by reason of physical injuries are component parts of the "mental suffering" for which, admittedly, damages may be awarded. If this be not so, then "mental suffering" is a meaningless phrase, and when the law says that recovery may be had for physical pain and mental suffering, it means only that recovery may be had for physical pain; 2. We think that the question is largely of academic, and to a very trifling extent, of practical, importance, since always and inevitably and against any instruction which a court may present, the jury will take into consideration these very elements of mental suffering. Physical pain has no existence if it is sought to dissociate it from mental suffering. Physical pain is but one of many forms of mental suffering. If the law contemplated an award of damages solely for physical pain, it is meaningless to say that recovery may also be had for mental suffering. It is equally meaningless to say that the mental suffering must be that occasioned by the physical pain, for then the latter phrase would alone be sufficient to convey the full meaning of the law. · Therefore when the law says that a recovery may be had for mental suffering, it means a recovery for something more than that form of mental suffering described as physical pain. What more does it mean? To mean anything it must include the numerous forms and phases which mental suffering may take, which will vary in every case with the nervous temperament of the individual, his ability to stand shock, his financial condition in life, whether dependent upon his own labor or not, the nature of his injuries, whether permanent or temporary, disfiguring and humiliating, and so through a long category, the enumeration of which it is unnecessary here even to attempt. Worry and anxiety over the future of his family would be a great element

of mental suffering to a man dependent upon his own exertions for his and their support. It would not constitute any element of suffering to a man of abundant means and wealth, identically injured. A woman's mental suffering would be much increased by knowledge of facial disfigurements—a man's naturally not so much so. Shall a jury be not permitted to consider these matters in estimating mental suffering, and is it an answer to say that they are too remote or "too delicate to be weighed by any scales which the law has yet invented?" They are not remote. They are direct and consequential. They differ in degree with individuals, with their sex, circumstances, and positions in life. But so do men differ in sensing physical pain; so do they differ in the mental suffering occasioned by physical pain alone. No one would pretend to say that the actual physical suffering of a crushed leg is the same in case of a sodden, phlegmatic tramp as it would be with a high-strung, nervous, active man of affairs. Yet the law has scales by which it measures the compensation for suffering of this kind, and measures it, of course, in terms of money. Why should it be supposed that those scales will break down and prove inadequate when other legitimate elements of mental suffering are cast into their balance? In truth the admeasurement of suffering in terms of money is a most clumsy device, but it is the best device which the law knows, and it is a device which the law will employ until some better is discovered. To forbid the consideration of these other elements of mental suffering, because the scales are not sufficiently delicate for their weighing, is equally to condemn the use of the scales in the very cases and for the very purposes now admittedly sanctioned by the law.

We think, therefore, that mental worry, distress, grief, mortification, where they are shown to exist, are properly component elements of that mental suffering for which the law entitles the injured party to redress in monetary damages.

But as we have said, we also think the whole matter possesses more academic than practical significance. Conceive the case of a plaintiff before a jury with a face shockingly mutilated and distorted. He testifies that he endured mental suffering caused by his injuries. He is asked of what the mental suffering consists. He replies, physical pain, anxiety for fear his injuries may prove so permanent and disabling as to render

him incapable of supporting his family, grief as he reviews the whole situation lest his disfigurement may humiliate him and make him an object of ridicule to his fellows. At the suggestion of defendant's counsel the jury is instructed to disregard all the elements of mental suffering excepting that arising solely from the physical pain. Can the jury do it? Will the jury do it? It is mere self-stultification to believe that it will do other than make up its verdict under the rule which, while not one of law, is one of well-nigh universal human conduct, the rule of "Put yourself in his place." Each juror will consider how he would feel under like circumstances, and he will not narrow his contemplation to the mere matter of physical suffering under the direction of any court. So that in fact verdicts always have and always will be rendered from this point of view.

For the foregoing reasons the judgment and order appealed from are affirmed.

Lorigan, J., and Melvin, J., concurred.