(91 South. 406)

No. 24657.

HEBERT et ux. v. BATON ROUGE ELECTRIC CO.

(March 27, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Gas** &copy;&rarr;18—Gas company held negligent in failing to close gas outlet in connecting main with apartment.

Where gas company, in connecting its main with an apartment, left gas outlet open, it was liable for death of child asphyxiated by escaping gas; the failure of the company to close the outlet constituting negligence.

2. **Gas** &copy;&rarr;19—Tenants who had never used gas held not negligent in failing to discover that gas company had left outlet open.

Tenants of apartment who had never before used gas were not negligent in failing to discover that gas company, in making connection, had left gas outlet open.

3. **Gas** &copy;&rarr;17—Gas company in connecting main with service pipe of house is required to ascertain that outlets in house are closed.

A gas company connecting its main with the service pipe of a house has the duty of ascertaining that the outlets in the house are closed, especially those which it has itself left open, being held to a degree of care commensurate with the dangerous character of the substance handled.

4. **Death** &copy;&rarr;99(3)—$7,500 for death of child held excessive.

Verdict of $7,500 to each parent for death of three year old child is excessive, and will be reduced to $2,500 to each parent.

5. **Costs** &copy;&rarr;234—Of appeal taxed against plaintiffs on reduction of judgment from $15,-000 to $5,000.

Where judgment of $7,500 for each parent was reduced on appeal to $2,500 to each, the costs of appeal will be taxed against the parents.

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; H. F. Brunot, Judge.

Action by Leslie E. Hebert and wife against the Baton Rouge Electric Company. Judgment for plaintiffs, and defendant appeals. Affirmed as amended.

Farrar, Goldberg & Dufour, of New Orleans, and Laycock & Beale, of Baton Rouge, for appellant.

Cross & Moyse and Odom & Strickland, all of Baton Rouge, for appellees.

By Division A, composed of Chief Justice PROVOSTY and Justices OVERTON and LECHE.

PROVOSTY, C. J. The workman of the defendant company, in making the gas connection with an apartment, failed to notice that the gas outlet in the kitchen was open. The escaping gas filled the apartment, and

asphyxiated the three year old child of the plaintiffs and its negro girl nurse. This suit is in damages for the mental pain of the plaintiffs from the death of the child, and for their loss of the companionship of the child.

The plaintiffs and Mr. and Mrs. Sicard had leased the apartment and moved into it some four months previously, and the gas connection was being made at their request.

The gas outlet in the kitchen had been left open, or uncapped, by the workmen of the defendant company when they had disconnected the stove of the former tenants, some five months previously.

The workman testified that he looked for the fixtures and went into the kitchen and looked around for a gas stove outlet, and found none, and that he asked the nurse, and also Mrs. Sicard, the only one of the tenants present, where their gas stove was, and was told by them that they did not have any.

Mrs. Sicard testified that the workman had made no investigation, and that whether he inquired or not about a stove in the kitchen she did not remember.

The workman left as soon as he had completed his job, and Mrs. Sicard, who had come from her place of employment merely to be present while the workman would be in the apartment, left also. Before leaving, she noticed the gas odor, and inquired of the workman about it. He reassured her, explaining that it came from a pipe he had opened. She had requested him to light one of the radiators, and he, experiencing some difficulty in getting the gas to ignite, and attributing the trouble to the presence of air in the pipe, had momentarily opened the pipe to let out the air.

This kitchen outlet consisted of a three-quarter inch pipe, protruding some nine inches out of the wall six or eight inches above the floor, with an elbow in it turned downward. It was in a corner, between a kitchen cabinet and the wall which cornered with the wall out of which it came, and therefore was an inconspicuous object, not easily seen by any one not particularly looking for it. Mr. Sicard, husband of Mrs. Sicard, had seen it at the time of moving into the apartment, but had paid no attention to it, and had not observed that it was uncapped. Mrs. Sicard did not remember whether she had ever seen it before the day of the fatal occurrence.

[1] The fatal occurrence was not the result of unavoidable accident, but of some one's negligence. Whose? Evidently, we think, the defendant company's. And especially so in view of the admitted fact that the defendant company's custom was not to cap outlets when disconnecting the gas service and removing fixtures, and of the further fact that the defendant company kept a record of having removed this particular fixture. Whether the negligence consisted in having left this outlet open at the time of removing the stove and cutting off the gas connection, or in not having closed it at the time of re-establishing the gas connection, appears to us to be immaterial.

The owner of the apartment was in no way negligent, since the piping of the house was in good order, save for the act of the defendant company in having left this outlet open.

. [2] The tenants were in no way negligent, since they had not theretofore been using gas, and therefore had had no occasion for informing themselves concerning outlets, and had the right to assume that the piping of the house was in good condition.

Mrs. Sicard was entirely justified in being satisfied with the assurance given her by the workman as to the source of the gas odor. And we think the same of Mrs. Hebert, the plaintiff, having been in like manner satisfied when she came to the apartment a while after the workman had left

and was told by the negro girl of the explanation the workman had given to Mrs. Sicard. Moreover, a mother would hardly be negligent of the safety of her child, in such a case.

Defendant charges contributory negligence in that the negro girl should have noticed the increasing intensity of the gas in the apartment and opened the windows.

The evidence shows that the action of gas in such cases is insidious, so that the victim is insensibly overcome. Moreover the day being cold, the girl had been enjoined to keep the windows closed. The very purpose of making the gas connection was to bring the heating apparatus into service.

Counsel for defendant argue that a gas company, when called upon for a gas connection, is not required to ascertain whether the piping in the house is in good condition, but has the right to assume that it is; that the owner of the house, or, vicariously, the tenant applying for the gas connection, has seen to that.

[3] Granting this to be true, the trouble in the present case was not that the piping in the house was not in good condition; the trouble was that one of the outlets had been opened and left so. A gas company connecting its main with the service pipe of a house certainly owes the duty of ascertaining that the outlets in the house are closed, especially those which it had itself left open. It is held to "a degree of care commensurate with the dangerous character of the substance handled." 20 Cyc. 1170, cited with approval in Bradley v. Shreveport Gas Co., 142 La. 49, 76 South. 233.

[4] The jury allowed $7,500 to each of the plaintiffs. This court has not been in the habit of allowing large damages for the mental pain of parents at the loss of a young child and their loss of the companionship of the child. Westerfield v. Levis Bros., 43 La. Ann. 63, 9 South. 52; Rice et ux. v.

150 La.—31

Crescent City R. Co., 51 La. Ann. 108, 24 South. 791; Sundmaker v. Y. & M. V. R. Co., 106 La. 111, 30 South. 285; Le Banc v. Sweet, 107 La. 355, 31 South. 766, 90 Am. St. Rep. 303; Lindsey et ux. v. Tioga Lbr. Co., 108 La. 468, 32 South. 464, 92 Am. St. Rep. 384; Wilson v. Banner Lumber Co., 108 La. 590, 32 South. 460; Ortolano et ux. v. M., L. & T. R. & S. S. Co.. 109 La. 902, 33 South. 914.; Buechner et ux. v. City of New Orleans, 112 La. 599, 36 South. 603, 66 L. R. A. 334, 104 Am. St. Rep. 455; Parker v. Crowell & Spencer Lumber Co., 115 La. 463, 39 South. 445; Hollins et ux. v. New Orleans & N. W. R. Co., 119 La. 418, 44 South. 159; Bourg v. Brownell-Drews Lumber Co., 120 La. 1009, 45 South. 972, 124 Am. St. Rep. 448; Cherry et ux. v. Louisiana & A. R. Co., 121 La. 471, 46 South. 596, 17 L. R. A. (N. S.) 505, 126 Am. St. Rep. 323; Burvant et ux. v. Wolfe, 126 La. 787, 52 South. 1025, 29 L. R. A. (N. S.) 677; Robertson et ux. v. Town of Jennings, 128 La. 795, 55 South. 375; Le Blanc v. United Irrigation & Rice Milling Co., 129 La. 196, 55 South. 761; Weekly v. Louisiana Western R. Co., 129 La. 790, 56 South. 889, Ann. Cas. 1913B, 798; Roby et ux. v. Kansas City Southern Ry. Co., 130 La. 896, 58 South. 701; Lea et ux. v. Kentwood & E. Ry. Co., 131 La. 852, 60 South. 370; Johnson v. Industrial Lumber Co., 131 La. 897, 60 South. 608; Vincent et ux. v. M., L. & T. R. & S. S. Co., 140 La. 1027, 74 South. 541; Sutton et ux. v. Champagne, 141 La. 469, 75 South. 209; Albert v. Munch, 141 La. 686, 75 South. 513, L. R. A. 1918A, 240; Patton et ux. v. Frost-Johnson Lumber Co., 142 La. 117, 76 South. 580. We duly take into account that it was plaintiff's only child.

[5] The judgment appealed from is reduced to $5,000, of which $2,500 to each of the plaintiffs, and as thus amended it is affirmed; the plaintiffs to pay the costs of this appeal.