[L. A. No. 8326. In Bank.—January 31, 1929.]

FRED H. SAWYER, Appellant, v. SOUTHERN CALIFORNIA GAS COMPANY (a Corporation), Respondent.

368

Earle M. Daniels and Julius V. Patrosso for Appellant.

O'Melveny, Millikin & Tuller, O'Melveny, Tuller & Myers and Thomas J. Reynolds for Respondent.

Roy V. Reppy, B. F. Woodward and E. W. Cunningham, *Amici Curiae.*

SEAWELL, J.—Plaintiff, Fred H. Sawyer, appeals from a judgment of nonsuit entered in favor of defendant, Southern California Gas Company, in an action brought by him to recover damages for personal injuries sustained from an explosion of illuminating gas. Defendant is a public utility corporation supplying gas for fuel and illuminating pur-

poses in the southern section of this state, including the city of Glendale, county of Los Angeles.

The explosion occurred on December 3, 1922, in a building containing four stores in said city of Glendale. One of the storerooms was occupied by a bakery, another by a meat market, the third by a confectionery and cigar store, and the fourth by an automobile accessory shop conducted by one Hooper, in connection with an automobile service and filling station maintained by him on adjoining premises. The building was completed during March, 1922, and before that time had been piped for gas. Four meters to register the amount of gas consumed by the respective tenants of the four stores had been ordered installed by the owner of the building in January, 1922, while it was being constructed and were thereafter placed by defendant Gas Company in the bakery shop beneath the bakery display window at the front of said shop. The three meters serving the bakery, meat market, and cigar and confectionery store had been turned on to supply gas for appliances used in said stores. Hooper had occupied the room used by him as an accessories shop from the time the building had been completed. Said room contained no appliances requiring gas and no gas had ever been conducted through the meter connecting with said room until the day of the explosion. No order to turn on said meter had ever been given to the defendant company and said company had at no time directed or authorized anyone to turn it on.

On the day of the accident resulting in injuries to plaintiff, which was Sunday, a gas oven used by Fawkes, the baker, was removed and a new gas oven, purchased by Fawkes from one Steen, was placed in the rear room of the bakery. Before the old stove was disconnected and moved the meter supplying gas to the bakery was shut off. Fawkes testified that he himself turned off said gas meter soon after the arrival of Woodruff and Redfern, employees of Steen who had been sent to remove the old oven and install the new one. Said employees arrived soon after 9 o'clock in the morning. Fawkes testified that he knew at all times which was his own meter and that on said day he touched none of the four meters except his own. He further stated that he was in his shop throughout the day and that the only person who went near the meters on said day besides

himself was Geisler, an employee of Steen. In some way the meter for the accessories shop was turned on, with the result that gas escaped into said shop through an uncapped house pipe leading from said meter to the accessories shop, ignited and exploded about 4 o'clock in the afternoon, causing injuries to plaintiff, a customer, and the death of Selby T. Brengle, an employee of Hooper. The accessories shop meter, through which no gas had passed prior to the day of the accident, registered a flow of 4,500 cubic feet after the explosion. Plaintiff offered evidence proving that said pipe in the accessories shop was uncapped when defendant company installed the meter and had remained uncapped to the date of the explosion. The company made no inspection to detect the uncapped pipe when the meter was installed.

Not only was the bakery meter shut off and the accessories shop meter turned on, but there is evidence that the proprietor of the cigar and confectionery store came into the bakery and complained that the supply of gas in his premises had been cut off. Fawkes testified that he saw Geisler kneeling in front of the meters after he had shut off his own meter and that he later told Geisler to turn on the meter for the cigar and confectionery store after complaint had been made of its having been turned off. Plaintiff herein brought a separate action against Steen, Woodruff, Redfern and Geisler, which was consolidated for trial with the action herein. In said action against Steen et al. the court granted nonsuits in favor of Woodruff and Redfern and the jury returned a verdict in favor of Steen and against Geisler for $10,000 damages. The judgment in said action, affirmed by the district court of appeal, *Sawyer* v. *Steen et al.*, 96 Cal. App. 784 [261 Pac. 1025], has now become final. In returning the verdict against Geisler the jury impliedly found that it was he who turned on the meter serving the accessories shop.

Plaintiff contends that the court erred in taking from the jury the case against defendant Gas Company for the reason that the evidence supports the conclusion that said company was negligent in failing to ascertain at the time it installed the meter whether or not the gas pipe was properly capped and also in not guarding against the possibility of its meter being turned on by placing thereon a

lock or other mechanical device. Defendant Gas Company contends that no duty rested upon it to inspect the pipes or to lock the meter at the time of installation and asserts that in any event the proximate cause of the accident was not set in motion by any omission on its part in the respects urged, but that the intervening wrongful or negligent act of a third person who turned on the meter was the proximate cause of the explosion.

The meters were inclosed in the space beneath the bakery display window. They were accessible by means of a board swung on hinges, which served as a door. The installation of the meters consisted in connecting them with the gas-mains of the company and the house pipes within the building, which were the property of the owner thereof, in such a manner that when the meter was turned on gas would pass from the main through the meter and into the house pipes for consumption. A wrench or other similar tool was required to turn on the gas.

Respondent's position is that a gas company even though it turns on a meter connecting with an uncapped house pipe pursuant to the direction of an occupant of a building cannot be held liable for the escape and explosion of gas which may thereafter ensue, and, hence, it cannot be held liable where, as in the instant case, it has merely installed the meter pursuant to orders of the owner of the building, and left it turned off, and it has subsequently been turned on by some person having no connection with the gas company.

It is not in all cases a sufficient answer to a claim of liability against a gas company that the cause of the escape and explosion of gas is to be found in the condition of the house pipes, which the gas company does not own or control. There are well-considered cases of other jurisdictions to the effect that a gas company may be liable where it either directs its employees to turn on a gas-meter, or authorizes the person applying for gas to turn it on, and an explosion occurs by reason of an escape of gas through a house pipe connected with the meter which was uncapped or severed at the time the meter was turned on. (*Christo* v. *Macon Gas Co.*, 18 Ga. App. 454 [89 S. E. 532]; *Schmeer* v. *Gas Light Co. of Syracuse*, 147 N. Y. 529 [30 L. R. A. 653, 42 N. E. 202]; *Hayes* v. *Cohoes Gaslight Co.*, 183 App.

Div. 182 [170 N. Y. Supp. 312]; *Swayzee* v. *City of Augusta*, 113 Kan. 658 [216 Pac. 265]; *Hebert* v. *Baton Rouge Electric Co.*, 150 La. 957 [25 A. L. R. 245, 91 South. 406].)

■ While it is generally held that there is no duty on the part of a gas company to inspect house pipes after service has once been established, and consequently no liability for injuries resulting from an escape of gas through house pipes which become defective in the absence of notice of a leak in the house pipes or other special circumstances creating a duty to cut off its supply of gas, such as were present in *Merrill* v. *Los Angeles Gas & Electric Co.*, 158 Cal. 499 [139 Am. St. Rep. 134, 31 L. R. A. (N. S.) 559, 111 Pac. 534], it does not follow that a gas company may turn on meters through which gas passes into uncapped house pipes without incurring liability for injuries to persons or property caused thereby, even though it has been ordered by an occupant of the building to turn on the gas supply. ■ Gas companies, as manufacturers and distributors of a highly explosive and inflammable substance, possess technical knowledge of the dangers to be guarded against in handling or installing gas appliances for illuminating and commercial purposes far beyond the knowledge possessed by the average person. It would appear to be the duty of a gas company to make some inquiry or investigation to satisfy itself that all openings in the house pipes are closed at the time it turns on its meters. H. P. Courtney, foreman of the defendant Gas Company, testified that when a meter is turned on a dial registers the slightest leakage. He further testified that it was customary upon turning on meters to watch this dial for five minutes to detect any leakage, and that if a leak was observed the meter was immediately turned off. It is not imposing an obligation of undue hardship upon gas companies to require them to make use of the means readily available to them to ascertain that all pipes connected with a meter to be turned on are capped.

The obligation imposed by law upon a gas company as a public utility to serve all who apply to it for gas without discrimination does not command it to install or turn on meters without some assurance that the safety of the lives and property of those residing in or coming upon the premises will not be imperiled thereby. ■ Nor would

a certificate such as that given by the plumbing inspector of the city of Glendale, in the instant case, free a gas company from what we conceive to be its duty to make reasonably certain that all pipes are capped before turning on its meters. Said plumbing inspector testified that meters were not to be set until his "O. K." had been given. He further testified that it was customary to leave one pipe uncapped in order that he might test the strength of the piping, and that said uncapped pipe would not be capped by him. It is reasonable to assume that the gas company had knowledge of this custom. The certificate of the plumbing inspector approving the plumbing did not purport to certify that all openings or pipes were capped.

Having concluded that a question for the jury may arise as to the negligence of a gas company which turns on a meter connected with an uncapped house pipe, we pass now to a consideration of the instant case, where the act of the gas company did not consist in turning on the meter, but in "setting" it upon the order of the owner of the building given before the completion thereof and the commencement of the tenancy of Hooper, and thus placing it within the power of others to turn on said meter and cause gas to flow into the premises of Hooper, who had not ordered a supply of gas.

In the several cases from other jurisdictions cited above, except *Herbert* v. *Baton Rouge Electric Co.*, 150 La. 957 [25 A. L. R. 245, 91 South. 406], as supporting the doctrine that a gas company may be held liable where it turns on a meter connecting with uncapped or severed house pipes upon the order of an occupant of the said building, gas passed into the apartment of a tenant who had not applied for it, through a pipe in his apartment which was uncapped or severed at the time the meter was turned on upon the application of the tenant of another apartment supplied by the same meter. In said cases the courts placed some emphasis on the circumstance that the person injured was not a tenant who had applied for gas, and stated that a gas company before turning on gas or permitting it to be turned on for the benefit of a tenant in an apartment house who has applied for it, must use reasonable precautions to ascertain that gas will not escape through uncapped or broken pipes in the apartment of tenants who have not

applied for it, implying that a distinction as to the liability of a gas company might be made between cases where the tenant requesting a supply of gas is injured and cases involving injuries to an occupant of another apartment. In the instant case the gas company had neither turned on the meter itself nor authorized any other person to turn it on. It had, however, upon the direction of Turner, the owner of the building, installed the meter and thus placed it within the power of another to turn it on and cause gas to flow into the premises of a tenant who had not directed that the gas supply be turned on. While there might be grounds for contending that if Turner, who ordered the meter installed when the pipe was uncapped, had been injured, he would be guilty of contributory negligence barring recovery, a question we need not here decide, his negligence or the negligence of Hooper, the tenant, if there were any negligence on his part, would not affect plaintiff, a stranger, who went upon the premises as a customer of the service station maintained by Hooper. ■ We are of the view that a gas company is not, as a matter of law, relieved of the charge of negligence in installing a meter connecting with an uncapped house pipe because the owner or tenant of the premises upon which a third person receives injuries has directed the gas company to install the meter.

■ In its brief respondent company sets forth at length a quotation from *Hale* v. *Pacific Telephone & Telegraph Co.*, 42 Cal. App. 55 [183 Pac. 280], which we regard as containing a proper statement of the law as to the liability of a defendant for injuries which would not have ensued but for the intervening acts of a third person. A portion of said quotation is as follows:

''The rule, as we understand it, applicable to such cases, is that where the original negligence of a defendant is followed by an independent act of a third person which results in a direct injury to a plaintiff, the negligence of such defendant may, nevertheless, constitute the proximate cause thereof if, in the ordinary and natural course of events, the defendant should have known the intervening act was likely to happen; but if the intervening act constituting the immediate cause of the injury was one which it was not incumbent upon the defendant to have anticipated as rea-

sonably likely to happen, then, since the chain of causation is broken, he owes no duty to the plaintiff to anticipate such further acts, and the original negligence cannot be said to be the proximate cause of the final injury.''

Other cases to the same effect are *Katz* v. *Helbing*, 205 Cal. 629 [62 A. L. R. 825, 271 Pac. 1062]; *Merrill* v. *Los Angeles Gas & Electric Co.*, 158 Cal. 499 [139 Am. St. Rep. 134, 31 L. R. A. (N. S.) 559, 111 Pac. 534]; *Pastene* v. *Adams*, 49 Cal. 87; *Feeney* v. *Standard Oil Co.*, 58 Cal. App. 587 [209 Pac. 85]; *Louisville Gas Co.* v. *Gutenkuntz*, 82 Ky. 432; *Chisholm* v. *Atlanta Gas Light Co.*, 57 Ga. 29.

It does not appear, as a matter of law, that Geisler, against whom the jury returned a verdict in the action against Steen and others, consolidated for trial with the present action, acted either from motives of idle curiosity or a malicious desire to cause injuries to lives or property. It is highly probable that the accessories shop meter was turned on inadvertently as the result of a confusion as to which of the several meters served the different shops. The gas company had not issued any rule prohibiting its patrons from turning on and off the supply of gas at the meter after the original establishment of the service. ■ We may take judicial notice of the custom of gas companies to permit their meters to be turned on and off by other persons than their own employees as the needs of patrons may demand. In fact, the terms and rules of the gas company, printed on the reverse side of the applications for service signed by Turner, the owner of the building, which were introduced in evidence, contain the following provision: ''No light shall be taken near an escape of gas, and as an additional precaution *the gas must be shut off at the stop-cock whenever a leak is discovered. . . .* '' (Italics supplied.)

It might prove exceedingly dangerous if meters were not accessible and so constructed that they could be turned off without securing the services of the gas company. ■ This is not a case where a single meter is installed in a building, but of several meters installed in one place. The accessories shop meter was installed some time after the other three meters, and after one or more of said meters had been turned on. It would be apparent, from the dials on said meters registering the flow of gas, to the employees

of the gas company installing the accessories shop meter and thereafter inspecting the meters that said other meter or meters were turned on, and the records of the company would show that for a period of about eight months no use had been made of said accessories shop meter. In the exercise of due care, the jury might have concluded that it should have occurred to the employees of the gas company, a dealer for profit in a dangerous commodity, that occasions might arise when other tenants would wish their meters turned off and on again and in so doing persons less familiar with the handling of gas and gas appliances than the agents of the company might become confused as to which of the meters served the several shops. By turning on the accessories shop meter for but a moment at the time it was set, the leakage of gas through the uncapped house pipe would have been apparent. Prudence required that it be determined whether there was an uncapped pipe before the meter was left connected with the gas mains and house pipes.

The probability of an accident happening through the acts of a third person in the manner in which it did happen, in the circumstances of the case, presented an issue of fact that may well have been submitted to the jury.

Evidence excluded by the court below as to the feasibility of placing a lock or other device upon the accessories shop meter to prevent its being turned on by others than the gas company was relevant to the liability of the said company and should have been admitted.

Judgment reversed.

Richards, J., Shenk, J., Curtis, J., Preston, J., and Langdon, J., concurred.

Rehearing denied.

Waste, C. J., Shenk, J., and Preston, J., dissented.