(138 So. 869)

## BIZET v. SOUTHERN CITIES DISTRIBUTING CO.

### No. 31213.

Nov. 3, 1931.

Rehearing Denied Jan. 4, 1932.

Harry V. Booth, of Shreveport, for appellant.

W. M. Phillips and Barnette & Roberts, all of Shreveport, for appellee.

BRUNOT, J.

This is a suit for damages. It is based primarily upon the defendant's alleged violation of a contract, and, in the alternative, upon defendant's alleged negligence. All of plaintiff's alleged causes of action were put at issue by the answer. The trial of the case resulted in a judgment rejecting the demands of the plaintiff, at his cost, and plaintiff appealed therefrom.

The plaintiff is a florist and desired natural gas for the purpose of heating his greenhouse. He entered into a contract with the defendant to supply that commodity for said use. We have read the record, and we

quote, with approval, from the opinion of the trial judge, rendered on plaintiff's application for a rehearing, his summary of the facts, and his comments thereon, which are as follows:

"On the morning of January 18th or January 23rd, 1930 there was very cold weather, the same freezing the service pipe leading from the ground to the meter and the meter itself, shutting off the gas from the boilers, and as a result practically everything in the greenhouse was frozen and destroyed. When plaintiff ascertained that the gas was off, he disconnected the service pipe leading to the meter, and found ice in the pipe and in the neck of the meter. He thawed this out and connected up, but still no gas. Then he took it loose again and thawed out the meter with hot water and upon reconnection the gas went through. This showed, undoubtedly, that not only the service pipe leading to the meter, but the meter itself was stopped up with ice.

"We further found that plaintiff, through his brother, who was a partner in the business, had signed a written application for service in which he agreed to certain rules and regulations printed on the back of the application. That defendant had not bound itself to anything by reason of the application, but its obligations arose under its franchise. Perhaps it might be better to say that its obligation arose by reason of it being a public utility.

"We held that, under this so-called contract, the same being ambiguous in certain particulars, the defendant was responsible for the condition of the meter, and the plaintiff was responsible for the condition of the service pipe.

"We found that the ice in the pipe and the meter was due to condensation of water vapor in the gas which gradually built up a frost in both, and the gas continuing to come through in large quantities, by reason of the furnaces going full blast, this frost continued to form until both the pipe and the meter were stopped up.

"We found that the pipe did not clog up before the meter did, for in such case there would not have been any more water vapor in the meter to finish the job there. On the other hand, we found that the meter did not clog up before the pipe for the same reason given above. We think both were practically simultaneous.

"We gave weight to the testimony of Mr. Weatherby, and still do not think it inconsistent for the reasons which we will not repeat.

"The defendant was the owner of the meter, and the same was under its control. The service pipe from the curb line to the meter was installed by and was owned by the plaintiff. The gas in the service pipe, until measured by the meter, belonged to the defendant, but inasmuch as any public utility must have, by reason of its business, some control over the service pipe, we held that this defendant did have reasonable control over same.

"We think such a public utility has the right to make reasonable rules in regard to the service pipe, and to refuse to render service unless such rules are observed. While the matter is not presented in this case, we think such public utility would have the right to make a rule that the service pipe shall be amply protected from extreme weather conditions. But the fact remains that defendant had no such rule in this case, and we cannot see where it is under a legal obligation to make such a rule.

"While we held in our original opinion that the obligations of plaintiff were set forth in the written application for service, and based our holding on such, we did this for the reason that no attack was made on the validity of same. Now that such attack has been

made, we think we can reach the same conclusion irrespective of such written obligations.

"In reaching our conclusion, we must bear in mind that this suit is between the person served and the person serving, and the rights of no third party are involved. We must likewise bear in mind that while the defendant is a purveyor of a dangerous substance, natural gas, the damage resulting in this case does not arise out of its dangerous character. We do not think such a defendant can shift its responsibility for the dangerous character of its product by saying that the property owner is likewise the owner of the service pipe. As the purveyor of such dangerous substance it is its duty to exercise such degree of control over the service pipe as may be necessary to prevent an accident. And this is something it cannot shift to the shoulders of another. But the substance dealt in, in so far as this case is concerned, is just the same as harmless water. The plaintiff is the owner of the service pipe, and if damage is done to plaintiff by reason of that pipe not being properly protected from extreme weather conditions, we cannot see any reason why the defendant is responsible for that.

"The cases of Wolff v. Shreveport Gas, Electric Light & Power Company et al., 138 La. 743 [70 So. 789, L. R. A. 1916D, 1138]; Hahn v. Southwestern, 145 La. 212 [82 So. 199]; and Hebert v. Baton Rouge Electric Company, 150 La. 957 [91 So. 406, 25 A. L. R. 245], were cases growing out of the dangerous character of the commodity dealt in by defendants, and bring about a different rule of law. They do not announce the doctrine that the defendant is responsible for the service pipe (when it does not own it) in a case where the dangerous character of the substance is not involved.

"Being of the opinion above set forth, we can see no good reason to discuss the validity of the so-called written contract or waiver of its terms by reason of knowledge and inaction in regard to the situation of the service pipe.

"Taking up the alternative plea, plaintiff contends that the Court erred in failing to hold that it became the duty of the utility upon the installation of service to have apprised plaintiff of the exposure of said service pipe and its attendant danger, as the defendant and not plaintiff knew that said peril existed.

"Plaintiff contends that it was the legal duty of defendant, with its superior knowledge, to have so informed him. That such omission of a legal duty was negligence for which defendant is responsible. We find the following in plaintiff's brief:

"'On the one hand we have a florist who about six years ago found it necessary to apply to defendant's predecessors for gas service with which to heat his floral establishment. He was limited in the selection of this service to one company. He equipped his premises ready to receive the company's services. He procured an inspection of the work done at his expense. After this and other details completed the utility makes installation of its meter by joining same on to the service pipes furnished and installed by the plaintiff and with other (without) ado turned their gas from mains into his premises. Plaintiff, of course, knew that the ordinary water line in times of immoderate weather is subject to freezing, but he did not know or was he informed that the ordinary gas line was subject to such phenomena. On the other hand, we have a gigantic utility corporation with laboratories, equipment, research, department, engineers, chemists and all other instrumentalities at their hand, making all information available to them as to what the action of natural gas might be in service pipes, constructed such as the company saw Bizet's to be constructed on the day it started its service. The utility alone knew that natural

gas carried a water vapor which might condense and cause frosting inside service pipes' or meters in cases where weather conditions' became immoderate. With this knowledge, together with their admitted duty to render adequate gas service, we earnestly submit to. the court that the utility has defaulted in its, duty to this plaintiff in failing to inform him of. the danger attending the exposure of his. service pipes. It was shown by the testimony that the company kept accurate thermometric readings during the period of cold' weather during January 1930. In fact they had their reading for the day of January 18, 1930. Mr. Smith admitted they knew a cold wave was approaching Shreveport and the' vicinity thereof, and yet not a word of warning was given to Bizet, which if given would' have most surely prevented the damage he' sustained.'

"Even granting the defendant knew that the pipes would freeze (that is prior to this case) we cannot just see the point that it owed a legal duty to all of its customers to apprise them of this fact, the failure to do which is negligence making it responsible."

For the foregoing reasons, the judgment appealed from is affirmed, at appellant's cost.

O'NIELL, C. J., dissents.