This appeal was before us late in the last term of this court and an opinion was rendered by us on September 3, 1937, in which we affirmed the judgment of the trial court. A motion for rehearing has been presented by appellants, and a reply thereto was made by appellee; all the parties presenting written and oral arguments along with authorities in support of their respective contentions. We have carefully studied each, along with our own former conclusions, and have again searched the voluminous record, which consists of 445 pages in the transcript, about 200 pages in the statement of facts, and lengthy printed briefs heretofore filed, and have reached the conclusion that we were in error in our former opinion, and that the motion for rehearing should be granted. We therefore withdraw our former opinion and substitute these conclusions in lieu thereof, disposing of the appeal in this opinion.
Dallas County Fresh Water Supply District No. 7 was the original plaintiff in the case and is one of the appellants here, and for convenience to distinguish it from other appellants we shall refer to it as the district. The Mercantile Securities Corporation was the defendant below and is appellee here.
This suit was instituted in a district court of Dallas county, apparently on May 28, 1930, by the District against appellee to recover certain taxes alleged to have been levied and assessed against appellee for the years 1926 to 1929, both inclusive, and by amendments covering the years from 1930 to 1934, both inclusive, and to foreclose a tax lien against its property claimed by the *Page 189 
District to be included in the area. The case was tried in February, 1935.
Allegations were made that in July, 1925, a petition was filed, by the proper number of applicants, with the commissioners' court of Dallas county, Tex., containing all the requisites of law in such matters, and that all the provisions of article 7881 et seq., Rev.Civ.Statutes, had been fully complied with, asking that a fresh water supply district be created as therein prayed for; that notice was given as provided by law; that the petition was duly acted upon by the commissioners' court; that an election was ordered and held, the result of which was declared to be in favor of the creation of the District; that an order was entered by the commissioners' court in September, 1925, creating the Dallas County Fresh Water Supply District No. 7; that thereafter the District issued and sold its bonds in the aggregate sum of $85,000 to various purchasers and levied a tax against the property situated within the District for the purpose of paying interest and creating a sinking fund in accordance with law to meet its outstanding obligations.
Additional allegations were made by the District that thereafter, by Acts of the First Called Session of the 39th Legislature, page 177 (Sp.Acts), being chapter 57 thereof (effective October 14, 1926), orders of the commissioners' court of Dallas county, Tex., creating the District, were especially and specifically ratified, validated, and confirmed, and each and all of said orders and decrees were thus made valid. For convenience, we shall hereinafter refer to this act as the Special Validating Act.
It was further alleged that in 1927 at the First Called Session of the 40th Legislature, page 165, chapter 58, § 3 (now article 7887a, Vernon's Ann.Civ.St.), a general act was passed validating all similar districts theretofore created where the provisions therein set out had been complied with. This act we shall refer to as the General Validating Act.
The petition also shows that the application to the commissioners' court, that court's subsequent orders, and the Special Legislative Act, above referred to, each and all described the District with "boundaries" as follows:
"All situated within the Crawford Grigsby and the Miles Bennett Surveys in Dallas County, Texas, including within the boundaries of the proposed district certain tracts of land and parts of tracts generally described as follows:
"That tract of land owned and occupied by Stickle Lumber Corporation; that tract of land containing approximately two acres, owned by L. S. Harper; all of Blocks `A,' `B,' `C' and `D' of Maple Lawn Terrace Addition to the City of Dallas; that tract of land owned by Paul H. Gunther et al., of dimensions approximately 166 feet by 1051 feet; that tract of land owned by F. B. Paine of dimensions approximately 220 feet by 1053 feet, which said district, including the above described tracts of land, is described by metes and bounds as follows:
"Beginning at a point on the N.E. line of Maple Avenue and at the south corner of the tract owned by the Stickle Lumber Corporation; thence N.W. and along the N.E. line of Maple Avenue and crossing the division line of said Grigsby Bennett surveys and continuing N.W. along said line of Maple Avenue to the west corner of a 5.81 acre tract owned by F. B. Paine as appears of record in Vol. 1063, page 218, County Clerk Records, Dallas, Texas; thence in a northeasterly direction and along the N.W. line of said Paine Tract to a point in the N.E. line of the Dallas-Denton Interurban right of way; thence in a southeasterly direction along said line of said interurban right of way to its intersection with the S.E. line of the Stickle Lumber Corporation tract; thence in a southwesterly direction along the S.E. line of said Stickle Lumber Corporation tract to its south corner, the point of beginning."
We have not attempted to detail all pleadings of the District, nor to even mention many things set out therein, but have only mentioned enough of them to show a cause of action was alleged, and more especially those applicable to the issues involved in the appeal.
Prayer was for judgment for the amount of its taxes shown to be due, and for a foreclosure of the tax lien against appellee's property shown to be within the district.
Appellee resisted the claim of the District for taxes and the lien securing same on many grounds. But because of stipulations of the parties found in the record, we think it only necessary to mention those upon which issues of law and fact became involved. The defenses urged, which we *Page 190 
think essential to this appeal, were: (a) That the creation of the District was illegal and void because the several acts of the Legislature under which the commissioners' court purported to act were in violation of the State and Federal Constitutions and the due process provisions thereof (Const. Tex. art. 1, § 19; Const.U.S. Amend. 14); and (b) that the boundaries of the District, as set out in the application, the commissioners' court orders, and Special Legislative Act, are not sufficient to inclose any defined area and are not such as will give notice to persons owning land in that vicinity that said lands are situated within the area claimed to constitute the District, and for these reasons there was no District, and consequently no power to levy and assess taxes or perform any other function attempted in this proceeding by the District. Appellee specifically pleaded that the boundaries and description of the property claimed to be in the District were insufficient for the reason the calls in the metes and bounds thereof did not connect at the most northern and eastern corners, and were not such boundaries as would put it upon notice that its property was included therein; that Block E of Maple Lawn Terrace addition to the city of Dallas, owned by it and attempted by the District to be taxed, was not named or otherwise designated by said boundaries.
Appellee also alleged that the District had issued and sold $85,000 in bonds to divers named persons and corporations, and, to avoid subsequent litigation, made all such purchasers and owners cross-defendants; these cross-defendants consisted of Republic National Bank Trust Company of Dallas, Tex., and some others who were residents of Texas and others who were nonresidents. Prayer was, among other things, that the District be declared void, and that its bonds be declared invalid and void; that it have judgment against plaintiff (the District) in the latter's action for taxes and foreclosure; and that appellee's property be declared not to be in said District; and that the cloud cast upon its property, because of claims by plaintiff and the cross-defendants, be canceled and removed.
All cross-defendants appeared and answered the cross-action, either in person or by proper counsel; they alleged they were innocent purchasers before maturity for value and had no knowledge of any vice in the creation or subsequent functions of the District; that the proceedings had prior to the issuance and sale to them of the bonds were valid, and, as required by law, had been submitted to and approved by the Attorney General of the state of Texas and registered by the Comptroller of Public Accounts. The pleadings of the District were adopted in toto in so far as applicable to cross-defendants' rights. They alleged certain interest coupons on the bonds held were due and unpaid. Prayer was that appellee take nothing against them under its cross-action, for judgment against the District for the amount shown to be due and unpaid, and against all parties to the suit establishing the validity of their bonds and coupons attached thereto, and for general relief.
Replication to appellee's answer and cross-action was made by the District, in which special exceptions were urged to that part attacking the validity of the District, for the reason it was a collateral attack and not made in a quo warranto proceeding by the state nor by any person acting under the authority of the state to institute and prosecute such a suit. Further replication was made that the General Validating Act (now article 7887a, Vernon's Ann.Civ.St.) and the Special Legislative Act, above referred to, validated any irregularities in the application to the commissioners' court of Dallas county and that court's subsequent orders, as well as the issuance and sale of the bonds. The District further averred that the boundary description given throughout the proceedings was sufficient to include all of appellee's property, and that, by a fair, reasonable, and legal construction thereof, appellee's lands were so included.
Prayer was as in the former amended petition, with the additions that appellee take nothing by its pleadings; in effect, if it be found that there is any latent ambiguity in the boundary description of the District, that the court correct the same so as to read in conformity with the intentions of the parties.
On motion of the appellee, at the conclusion of the introduction of testimony, the court instructed the jury to return a verdict against the District in its action for the amount of taxes and a foreclosure of lien. There was no testimony offered by the District on the point and by a stipulation in the statement of facts the court's action was fully justified.
At the conclusion of the introduction of testimony, and prior to the submission by *Page 191 
the court of his main charge, all of appellant bondholders requested a peremptory instruction to the effect that all the outstanding bonds of appellant District, describing them, were valid, subsisting legal obligations of the District, and that the District was a valid and existing fresh water supply district. These requested instructions were refused by the court. Exceptions were taken and preserved by assignments of error.
Certain special issues were submitted to the jury, which, with their answers, are in effect as follows:
1. That the boundaries of the District, as set forth in the Special Validating Act, failed to definitely inclose a defined area.
2. That the boundaries of the District, as set forth in the Special Validating Act, failed to definitely inclose block E of Maple Lawn Terrace addition.
3. That the boundaries of the District as set forth in the Special Validating Act are insufficient to notify landowners in block E, Maple Lawn Terrace addition, that their lands are included therein.
The court overruled the special exceptions of the District and cross-defendants to appellee's allegations that the District was void for reasons therein set out. As above shown, the exceptions challenged the right of appellee to collaterally attack the validity of the District. The ruling of the court was excepted to and forms the basis of several assignments of error.
Upon the instructed verdict above mentioned and the answers of the jury to issues submitted, the court entered judgment that the District take nothing in its action for taxes and foreclosure as against appellee, and that the lands of appellee included in blocks C, D and E of Maple Lawn Terrace addition to the city of Dallas are not included in the District's area, and are not subject to taxation by it, and that the cloud cast upon the title be, and the same is, removed; that cross-defendants recover of the District the respective sums shown to be due them on past-due coupons. The District and cross-defendants excepted to the judgment and have perfected this appeal to the Dallas supreme judicial district court, and by order of the Supreme Court it has been transferred to this court for consideration.
All appellants have presented many alleged assignments of error, which, in so far as this appeal is concerned, we may treat under three general points, they being:
(1) Could the appellee attack, as it did, the corporate existence of the District and its rights to function as a fresh water district? An answer to this question will determine whether or not the court erred in overruling the special exceptions urged to those pleadings.
(2) The trial court erred in refusing to give the peremptory charges requested by the appellant bondholders, to the effect that the District was valid and that its bonds and obligations were likewise valid.
(3) Was the appellee at the time the suit was instituted estopped to deny the validity of the District and its rights to function as such?
The order in which we have given these propositions does not correspond with the numerical order in which the assignments of error raising them are presented, but, as we view it, they are chronologically named as they were presented to the court, and we find it more convenient to thus treat them.
As we discuss the first proposition it must be borne in mind that when appellee pleaded the invalidity of the District, upon the grounds that article 7881, Rev.Civ.Statutes, under which the District must have been created, that article of the statutes had been declared void by the courts. State ex rel. Merriam v. Ball, 116 Tex. 527, 296 S.W. 1085. Further, if the boundaries of the proposed District were not sufficient in law to designate the area to be included, no District had been created and would, of necessity, be void. Trimmier v. Carlton, 116 Tex. 572,296 S.W. 1070. Then, again, appellee was defending its property against what it alleged to be an illegal levy and attempt to burden it with taxes and liens by a district or body alleged to be without authority to so act. Under such conditions as these, the general rule so well established in this state, that only the state or some one acting with its authority can attack the validity of a municipal corporation, does not apply.
Speaking of the rule above referred to, it was said in Grisham v. Tate (Tex.Civ.App.) 35 S.W.2d 264, 265 (writ dismissed): "The rule, however, is not without its exception. Where there is no law authorizing the creation of such a corporation, or where the law under which it purports to exist is unconstitutional, or where *Page 192 the attempt to comply with the provisions of the law authorizing suchcreation is so utterly lacking or defective as to render the attempt tocreate such a corporation void, the right of such corporation to exist may be challenged by any party whose interest is directly affected thereby." (Italics ours.)
In Parks v. West, 102 Tex. 11, 111 S.W. 726, 729, the Supreme Court, discussing the right of an individual to attack the validity of such a corporation, said: "The attack of the plaintiffs is not merely upon the corporate existence of the district, but is directed against the power of the defendants to lay burdens on their property and subject them to the payment of taxes. Surely they have the right to do that although the reason they assign for lack of power may also go to the right of the district to exist under the Constitution. Certainly a property holder has the right to say to the court that he is protected by the Constitution from the imposition of a tax by persons to whom the Constitution in effect, denies such power."
After the Special Legislative Act validating and giving such life to the District as it may have had, and the General Validating Act (now article 7887a, Vernon's Ann.Civ.St.) were introduced in evidence and before the court, the special exceptions were renewed and again overruled. The court properly held the validating acts constitutional, but there remained in appellee's pleadings the allegations that in the attempt to comply with the provisions of law authorizing the creation of the District no description or boundaries thereof were given which would inclose the area claimed to constitute the District, and this obviously was an issue to be determined, and, if found to be as alleged, appellee would have the right to thus attack the validity of the District under authority of Grisham v. Tate, supra. The exceptions were properly overruled, and the assignments of error raising the question are by us overruled.
The second proposition above, made by appellants, was not discussed by us in our former opinion, mainly because we confused the requested peremptory instructions as being by appellant District instead of by appellant bondholders. The District was clearly not entitled to a peremptory instruction because it had sued for taxes and had made no proof of its case. But the requests were from the bondholders, and it is upon this proposition that we feel impelled to grant the motion for rehearing.
All appellants plead the sufficiency of the boundaries to inclose a defined area. A Mr. Catlett testified that he was one of the original petitioners and was the first president of the board of supervisors; that he was well acquainted with the history of the creation of the District, and had kept in touch with it throughout its life; that he knew the territory it embraced. He identified a plat used in the organization and said it showed the area covered. Mr. Reagan, a local surveyor, said he had gone over the grounds and had measured the northwest line, it being the Paine line referred to in the second call; that it was 1,053 feet long and ended at the southwest line of the right of way; that no point on the Paine northwest line would reach the northeast line of the right of way; he had before him the plat identified by Mr. Catlett, and said the field notes as given would not cover in detail the area claimed by appellants to constitute the District, but to do so certain revisions would have to be made to cause certain corners to close.
If the boundaries of the district as given can be legally construed so as to inclose the area claimed, the defense of appellee, based upon these grounds, must fail, and the instructed verdict, at the request of the bondholders, would have been proper.
It is so fundamentally true that it is the duty of the court to construe written instruments, and not a matter for the jury, we deem it unnecessary to cite authorities supporting the statement. It is almost as well settled that mixed questions of law and fact are for determination by the court, and should not be embraced in issues to the jury. 41 Tex.Jur. pp. 10331035, §§ 231-232; Speer's Special Issues, p. 46, § 37.
The boundaries of the District are set out in, and constitute a part of, the petition, as well as in the orders of the commissioners' court and the Special Validating Act, and upon a construction of these instruments hinges the deciding point in the question under discussion. The trial court should have construed these instruments, applying the rules laid down by our Supreme Court in such matters. To better illustrate what we shall have to say in regard to the construction the court should have placed on these boundaries, we are including herein the plat referred to. *Page 193 
[EDITORS' NOTE: MAP IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 194 
It will be observed that the boundary description for the District reads in part: "That tract of land owned and occupied by Stickle Lumber Corporation; that tract of land containing approximately two acres owned by L. S. Harper; all of Blocks `A,' `B,' `C' and `D' of Maple Lawn Terrace Addition to the City of Dallas; that tract of land owned by Paul H. Gunther et al., of dimensions approximately 166 feet by 1051 feet; that tract of land owned by F. B. Paine of dimensions approximately 220 feet by 1053 feet, which said district, including the above described tracts of land, is described by metes and bounds as follows." Then follows the metes and bounds beginning at a point on the northeast line of Maple avenue at the south corner of the Stickle Lumber Corporation tract; the beginning corner is indicated on the map with "a" and the call follows the northeast line of Maple avenue to point B, called the west corner of a 5.81 tract owned by F. B. Paine and referred to in his deed of record in Dallas county deed records; the next call is important to appellee's contention. It reads: "Thence in a northeasterly direction and along the N.W. line of said Paine tract to a point in the `N.E.' line of the Dallas-Denton Interurban right-of-way." The next call is for a southeasterly direction with said interurban right of way line to its intersection with the southeast line of the Stickle Lumber Corporation tract; thence in a southwesterly direction along the southeast line of said Stickle Lumber Corporation tract to its south corner, the place of beginning.
It is claimed by appellee that the Dallas-Denton Interurban right of way diverges from the main line, north of the most eastern corner of the Stickle tract, as indicated by dotted lines on the plat, and to follow the northeast line of the Interurban right of way as called for, one could never reach the southeast line of the Stickle tract, as called for at the end of the third call; that this fact would leave a space between that point and the most eastern corner of the Stickle tract uncovered by calls.
There was in evidence the deed covering the Stickle tract which located the beginning corner, and the first call is to end at the west corner of the Paine tract, also identified by the recorded deed; the next call is with the Paine northwest line to a point in the "N.E." line of the Interurban right of way. The testimony also discloses that the Paine northwest line is 1,053 feet long and an actual survey of the line at that distance reaches the "S.W." line of a right of way, it being the only right of way in that vicinity. It further appears that by following the Paine northwest line to its full length no point on the "N.E." line of a right of way can be reached. The surveyor Reagan testified in regard to this discrepancy as follows: "I am sure that is an error, because in the first place the Paine line does not go over to the northeast right-of-way line; in second place the right-of-way connecting the north corner of the Paine and the east corner of the Stickle Lumber Corporation is the Southwest right-of-way line and not the northeast right-of-way line." It further appears from the testimony conclusively that the title to the right of way in question was in the Missouri, Kansas Texas Railway Company, but it is equally certain that at the time the description was prepared the tracks on the right of way were being used by the Dallas-Denton Interurban Railway Company. If it can be said that the north corner of the District is on the southwest line of the right of way, and that the parties so intended, then the calls from that point will inclose a definite area. A recorded plat of Maple Lawn Terrace addition was in evidence, and this addition embraces all property of appellee platted in the above map lying northwest of the Stickle tract, including block E shown thereon. It is uncertain whether the addition includes the Gunther and Paine tracts, but, as we view it, this can make no difference as to appellee's rights.
The statutory provisions under which water districts, such as the one under consideration here, are created, do not require a description by metes and bounds as are required in some other statutes for the creation of districts, but only that the petition "shall set forth the boundaries thereof." A boundary may be determined in many ways; for instance, by common lines between surveys; by objects, natural or artificial; or if the area be named as one already established and recorded, such as a lot or block, by number; a reference to such numbers is sufficient. These rules have been established by our courts in what we term boundary suits growing out of deeds and conveyances. It is also well established in this state that boundaries, which by proper construction can be made certain, are deemed to be *Page 195 
certain. In determining boundaries, our courts have established the general rule that the entire description in the instrument must be considered and the identity of the land ascertained by a reasonable construction of the language used. Welder v. Carroll, 29 Tex. 317, 323; Barnard v. Good, 44 Tex. 638; these old cases have been followed many times. It is also well-settled law in this state that the rules for ascertaining the boundaries of grants are designed to carry out the intention of the parties, and when that is manifest all else must yield and be governed thereby. 7 Tex.Jur., p. 123, § 5, and authorities there cited.
As we have stated in another part of this opinion, if it can be said that the second call in the District's boundary description was intended to end at a point on the Paine line where it touches the southwest line of the right of way instead of as called for on the northeast line of the right of way, the subsequent calls will close and embrace a defined area; for the next call is "in a southeasterly direction along said line of said Interurban right-of-way to its intersection with the S.E. line of said Stickle Lumber Corporation tract." The testimony of the surveyor shows that this is the only line of the right of way that will reach the Stickle line; to follow any other line of the right of way will call for an impossible corner and cause the boundaries to fail to close. Certainly the point designated on the northeast line of the right of way is made ambiguous, if not impossible, since it cannot be "on the Paine line" as called for. However, to reverse the third call and begin at the point where the right of way intersects the Stickle southeast line and follow the right of way line in a northwesterly direction to where it reaches the Paine northwest line, the north corner will be as contended for by appellants, and thus inclose a definite area which will unquestionably embrace all of appellee's land. The principle involved in this rule, that is, to establish uncertain and ambiguous boundaries by reversing definite calls, is well settled in this state. One of the latest cases on the point is Gill v. Peterson, 126 Tex. 216, 86 S.W.2d 629; on the same point it is said in 7 Tex.Jur. p. 148, § 25: "However, the order in which the lines of a survey were run as stated in an instrument, is not of any particular consequence, and there is no doubt that if a survey may be more definitely and satisfactorily located by reversing the calls, this may be done. Indeed, it is held that this method should be pursued if a more accurate result can be obtained, or whenever by doing so the land embraced most nearly harmonizes all the objects of the grant."
The foregoing rules of law were no doubt prompted by such well-established principles as: "The certainty required in a conveyance of land is that by the use of extraneous evidence it may be applied to the property conveyed so as to identify it." McManus v. Orkney, 91 Tex. 27,40 S.W. 715, 717; Eustis v. City of Henrietta, 90 Tex. 468, 39 S.W. 567. Also, "The policy of the law does not require courts to scrutinize the proceedings of a judicial sale with a view to defeat them; on the contrary, every reasonable intendment will be made in their favor, so as to secure, if it can be done consistent with legal rules the object they were intended to accomplish." McCardell v. Lea, 111 Tex. 380, 235 S.W. 518,520. To the same effect are the cases of Coker v. Roberts, 71 Tex. 597,9 S.W. 665; Blackwell v. Scott (Tex.Civ.App.) 223 S.W. 334 (writ denied); Poitevent v. Scarborough, 103 Tex. 114, 124 S.W. 87.
If one had owned the property that is here claimed by appellants to compose the District and he had conveyed it by a deed embracing the field notes contained in these several documents, it cannot be doubted that the purchaser would take title to the lands, as against another with notice of the conveyance. Under the rules of construction above mentioned, the trial court should have held the boundaries sufficient to designate the area claimed to constitute the District, and from this it follows that the requested instructions by the bondholders should have been given, and a judgment entered upholding the validity of the District and the bonds theretofore issued and sold by it.
We do not consider the rule announced is in conflict with the holding in the case of Trimmier v. Carlton, supra. There the trial court construed the instruments embracing the field notes, but held they were insufficient to inclose the area claimed; it was shown there was one side of the area which could not be closed by the application of any of the rules of construction known to the law, and the Supreme Court upheld the construction given by the trial court.
It would unnecessarily prolong this discussion to theorize upon the judgment of the trial court which removed from the District appellee's blocks C and D of Maple *Page 196 
Lawn Terrace addition, which blocks were designated by name and numbers. In the case of Parker v. Harris County Drainage District (Tex.Civ.App.)148 S.W. 351, 361 (writ refused), an expression is found quite applicable here, it being: "We cannot understand how appellants [appellee here] can be allowed to take their lands out of this district upon the grounds here urged. The same objections could be urged by any landowner in the district with the effect of destroying it utterly."
The third group of assignments mentioned relate to estoppel of appellee in the matter of denying the validity of the District, but under the view we take of the case, in which we hold the trial court should have construed the description to be sufficient to establish the District, the question of estoppel becomes moot, and its discussion would be useless.
The judgment of the trial court against appellant District, in favor of appellee on the former's action for taxes and a foreclosure of the lien, as well also that part rendering judgment in favor of the bondholders against the District for the amounts shown to be due, was correct, and that much of the judgment is affirmed. The appellant district has made no complaint in this appeal of these items in the judgment. All other parts of the judgment are reversed and here rendered in favor of appellants, establishing the validity of the appellant District, and that its bonds and coupons held by the bondholder appellants are valid obligations of the District. These conclusions shall be certified to the trial court for observance.
Affirmed in part, reversed and rendered in part.