THE TEXAS COMPANY ET AL V. GEORGE W. GRANT.

No. A-182. Decided October 25, 1944.
Rehearing overruled November 22, 1944.
(182 S. W., 2d Series, 996.)

*Wm. E. Loose,* of Houston, *Kennemer & Armstrong, James H. Walker,* and *M. B. Solomon,* all of Dallas, and *Black, Graves & Stayton,* of Austin, for petitioner.

It was error for the Court of Civil Appeals to hold that the ordinance of the City of Dallas applied to the Texas Company, and that the petitioner were liable for the injuries sustained by respondent on the theory that said ordinaces did apply to the Texas Company. In constructing the sidewalk the abutting owner was compelled to construct same in accordance with the ordinances and specifications furnished by the city and was not guilty of negligence when he did so. Webster v. Cincinnati & O. Ry. Co., (Ky.) 105 S. W. 945; Western Auto Co. v. Phelan, 104 Fed. 85; Werner v. Trout, 2 S. W. (2d) 525; Texas Co. v. Wheat, 140 Texas 468, 168 S. W. (2d) 632.

*John W. West* and *W. H. Hall,* both of Dallas, for respondent.

Under the jury finding that both the oil company and the owners of the property were making a special use of the sidewalk, the ordinance in question was applicable to both of them. Houston, B. & N. Ry. Co. v. Pollard, 66 S. W. 851; Jones v. Gibson, 18 S. W. (2d) 744; Ames v. Herrington, 139 S. W. (2d) 183.

MR. JUDGE BREWSTER, of the Commission of Appeals, delivered the opinion for the Court.

This is a suit by George W. Grant, respondent, against the Texas Company, Rex. C. Redman and J. R. Redman, petitioners, for damages for personal injuries. On a jury verdict the trial court rendered judgment for Grant, which was affirmed by the Court of Civil Appeals. 179 S. W. (2d) 1007.

At the time in question the Redmans were operating a filling station as sublessees of the Texas Company, which had the property under lease from the owner. Shortly after 9 ·o'clock in the evening, Grant was walking on the sidewalk abutting this station when he slipped on a spot of grease and fell, injuring himself.

Grant seeks to fix liability on petitioners by virtue of Article 144 of the ordinances of the City of Dallas, which defines the duties of owners and users of property with respect to any defective or hazardous condition of abutting sidewalks. The article is in nine sections. The first requires any one desiring to "construct, reconstruct, alter, repair, remove or replace any sidewalk or driveway" in Dallas, to get a permit from the city's director of public works. The second requires him then to give a bond in favor of the city conditioned that he will do the work in strict compliance with the city's specifications and pay all damages thereby caused to any person or property. The third requires that sidewalks be "constructed, reconstructed or repaired" in accordance with the "permanent and standing specifications" set out in the fourth. The fifth provides that when a driveway is abandoned the owner of the abutting property shall construct a curb thereon according to the city's standard specifications. The sixth prescribes that the abutting property owner or person, firm or corporation enjoying the use of any property abutting on a sidewalk or curb that has become defective and has resulted in causing damage or injury as a result of such defective condition, shall be primarily liable in damages for any loss or damage sustained as a result of such defective condition. The seventh provides that *it shall be the duty of any property owner or person, firm or corporation making special*

*use of any sidewalk or curb for purposes of ingress or egress for loading elevators, downspout drains or any other specific use of whatever kind or character to keep said sidewalk, parkway, curb and driveway abutting said property in good and safe condition and free from any defects and hazards of whatever kind and character.* The eighth declares that any sidewalk, parkway, driveway or curb which has become defective, unsafe and hazardous is a nuisance and must be reconstructed or repaired by the abutting owners after 30 days notice by the director of public works. The ninth section provides: "Any person, firm or corporation or others violating any provision of this chapter shall be guilty of a misdemeanor and, if convicted, shall be fined not less than twenty-five dollars and not more than two hundred dollars. Every day that the violation continues shall constitute a separate offense. This penalty shall be in addition to and cumulative of the primary liability for any loss or damage resulting from defective and unsafe condition of sidewalks imposed by this chapter upon the abutting property owner of said such defective and unsafe sidewalks, curbs, gutters or driveways."

Grant alleged that in 1930 one Seale, while constructing the filling station in question, applied to the City of Dallas for permission to take out the level sidewalk then abutting the lot and to construct in its place a sloping sidewalk; that the permit was granted and the work done; and that thereafter the sloping sidewalk was maintained by Seale, by the Texas Company and by the Redmans, as lessees, all under the ordinance above referred to. He alleged that the Texas Company and the Redmans "were guilty of actionable negligence in that they caused, permitted or allowed an accumulation of oil and grease to be placed or left" on this sloping sidewalk which, "being very slippery and being upon a sloping surface the same constituted a defect in said sidewalk and constituted a hazard in the ordinary and normal use of said sidewalk," which caused him to slip and fall thereon. He alleged that he "did not know who placed the said oil and grease upon said sidewalk nor when same was placed upon said sidewalk, but the defendants each knew or by the use of ordinary care should have known that said oil and grease was on said sidewalk." He further alleged that the Redmans were operating the station at the time of his fall, under a contract whereby the Texas Company was to furnish them its products at a special price and they were to handle only such products and were to designate their place of business as the "Texaco Station." There was no other allegation of any special use of the sidewalk by the Texas Company. However, Grant alleged that the Redmans serviced customers' cars with oil and grease, on the premises, which cars would at times be stopped on the

sloping sidewalk; that in the servicing process quantities of oil and grease would fall onto the sloping sidewalk and in addition thereto the customers' cars would drip small quantities of oil and grease from their oil pans and differentials onto the sidewalks; and, further, that the Redmans habitually parked their own cars and trucks at or near the point where he fell and that they dripped oil and grease onto the sidewalk.

The jury found that there was oil, grease or a slippery substance on the sidewalk and that Grant stepped on it, fell and sustained personal injuries; that both the Texas Company and the Redmans were making a special use of the sidewalk in the operation of their business; that the presence of the oil, grease or slippery substance on the sidewalk constituted a hazard; that the sidewalk was not then in a good and safe condition; that Grant's injuries were not the result of an unavoidable accident; and that he was not guilty of any contributory negligence.

Over petitioners' objection, the trial court submitted no issue as to their negligence in "allowing or causing oil, grease or slippery substance to be upon the sidewalk" and none on proximate cause. It is apparent, therefore, that the case was tried on the theory that the ordinance made petitioners insurers of the safety of pedestrians using the sidewalk. We are not in accord with that view.

As already stated, there was no allegation of any special use by the Texas Company of the sidewalk except that it was to furnish its products to the Redmans at the station operated by them under an agreement that they were to handle only its products and were to designate their place as a Texaco station.

In support of this allegation Grant offered in evidence a written lease whereby the Texas Company leased the station to the Redmans for one year and thereafter from year to year and the Redmans were to pay a rental of $40.00 per month plus one cent per gallon on all gasoline delivered to the station for resale, in excess of 2,500 gallons per month. By letter of even date with this lease the Texas Company modified the same so that it was to receive as rental one cent per gallon "for each gallon of gasoline delivered to the demised premises for resale." Otherwise, the only testimony on this point was from Grant. He said that he had seen "Texaco" Company trucks drive into the station with gasoline and oil; that they were very large trucks, painted red with "Texaco" on the side; that they would swing in over the sidewalk and sometimes the front end of the

truck was over the sidewalk. Asked whether they were gas and oil trucks, he replied, "I don't know whether there was oil in it or not, it was gasoline." There was no testimony that wholesalers, other than the Texas Company, did not also deliver gas and oil to the Redmans.

■ We are of the opinion that these facts did not make the Texas Company a special user of the sidewalk, under the seventh section of the ordinance above quoted. As a distributor of oil and gasoline it had the same right to cross the sidewalk to make sale and delivery as any customer of the Redmans had to cross it to buy oil and gasoline, and the use was, in legal effect, the same. It made the same use of the sidewalk as did a customer who crossed it to buy Coca Cola from the Redmans, to have his car washed, or to use the rest room which they advertised. It was only one of the public, all of whom had the legal right to cross the sidewalk to deal with the Redmans, hence such use was general and not special. Schindler v. Schroth et al, 146 Cal., 433, 80 Pac., 624, 2 Am. Cas. 670. In so using the sidewalk as a means of access to the Redmans' station it had the same right as Grant had to walk longitudinally thereon. Adams v. Grapotte (Civ. App.), 69 S. W. (2d) 460. And, since it was not a special user under the ordinance, it was under no duty to keep the sidewalk free from hazards or defects. Grapotte v. Adams, 130 Texas 587, 111 S. W. (2d) 690, affirming Adams v. Grapotte, supra.

■ Nor do the facts stated create any legal identity between the Texas Company and the Redmans. Under substantially the same facts this court recently held that the relationship was not that of master and servant but of landlord and tenant. Texas Co. v. Wheat et al, 140 Texas 468, 168 S. W. (2d) 632.

■ We think there is testimony that the Redmans were making a special use of the sidewalk as found by the jury. They operated the station to sell gasoline and oil, and to grease, service and wash cars, and there was testimony that they used not only their own premises but the sidewalk as well in carrying on that business. And such use was exclusively and peculiar to them. Nobody else did or could so enjoy it. Therefore, we hold it was a special use, within the contemplation of the ordinance under consideration. And their right so to use the sidewalk was subject to the paramount right of the public to use it for purposes of travel and transportation. 25 Am. Jur., Highways, Sec. 305, p. 597.

■ But we do not think that the ordinance makes them insurers of the safety of persons walking on the sidewalk. This is made

plain by a consideration of the ordinance as a whole. Clearly the enactment was for the benefit and protection of the City of Dallas. Its first five sections and sections 8 and 9 provide that the city shall supervise the construction, alteration or removal of curbs, driveways and sidewalks and prescribe means by which such supervision may be insured and enforced. The purpose of this supervision is revealed in section 6, wherein it is declared that "the abutting property owner or person * * enjoying the use of any property abutting on a sidewalk * * that has become defective and has resulted in causing * * injury * * shall be *primarily liable* in damages for any * * damage sustained as a result of such defective condition," and in section 9, wherein, after prescribing a penalty for any violation of the ordinance, it is declared that "this penalty shall be * * cumulative of the *primary* liability for any * * damage resulting from defective and unsafe condition of sidewalks imposed by this chapter." (Italics ours.) The terms "primarily liable" and "primary liability," used in the ordinance, are plainly relative. They connote *secondary liability* on the part of the city. Giving the phrases their ordinary and obvious meaning, we think they clearly do not enlarge or diminish the liability of either the abutting owner or the city. All they say is that, as between the two, the liability of the former is primary to that of the latter. Otherwise, the liability of the two is identical because it arises for breach of the same duty. See Houston B. & T. Ry. Co. v. Scheppelman (Com. App.), 235 S. W. 206.

■ A city is not an insurer of the safety of its sidewalks. Stinnett et ux. v. City of Waco, 142 Texas 648, 180 S. W. (2d), 433. It is liable only for such defects therein as a person of ordinary prudence would not permit to continue, provided such defects are known by it or could have been discovered in the exercise of ordinary care. City of Galveston v. Dazet (Texas), 19 S. W., 142; McQuillin, Munic. Corps. (2d Ed.), Vol. 7, p. 32, Sec. 2910. Certainly there is nothing in the ordinance that attempts to enlarge that liability, and since all it does as to the Redmans is to make their liability *primary*, it follows that they are not liable as insurers but were charged only with ordinary care to keep the sidewalks free of hazards to pedestrians. That rule makes their primary liability coincide with the city's secondary liability, and it covers and protects the latter, which is clearly all that the ordinance aims to do. Grant alleged that he did not know who placed the oil and grease on the sidewalk causing him to slip and fall. Therefore, we hold that if the Redmans knew it was there, their duty was to remove it, provided a person of ordinary prudence would have done so. If they did not know it

was there, their duty was to use ordinary care to discover it in time to remove it before Grant's fall, provided a person of ordinary prudence would have so removed it. City of Galveston v. Dazet, supra.

█ Another reason supports our construction of this ordinance. It is in derogation of the common law rule that an owner is under no duty to keep an abutting sidewalk free of hazards, Grapotte v. Adams, supra, except such as result from his own negligence, Kapmann v. Rothwell, 101 Texas, 535, 109 S. W., 1098, 17 L. R. A. N. S. 758. Therefore, if there is any doubt as to its purpose and meaning, the ordinance must be strictly construed in favor of the Redmans. City of Waco v. Roberts, 121 Texas 217, 48 S. W. (2d) 577.

In determining the liability of petitioners we have purposely restricted our consideration to the seventh section of the ordinance because the sixth section clearly has no application to the facts of this case.

█ We sustain petitioners' point that the trial court erred in not submitting the issue of proximate cause for the jury's determination. That issue is for the jury, as it would be even if this were a case of negligence per se. Waterman Lbr. Co. v. Beatty, 110 Texas, 225, 218 S. W., 363. Cases in which proximate cause is determined as a matter of law are few, and we do not regard this as one of them. See Jones v. Gibson (Civ. App.), 18 S. W. (2d) 744.

The judgments of both courts below are reversed, and judgment is here rendered for petitioner, the Texas Company. As to petitioners Redman, the cause is remanded to the district court for a new trial in conformity with this opinion.

Opinion adopted by the Supreme Court October 25, 1944.

Rehearing overruled November 22, 1944.