**JONES et al. v. ELLIOTT et al.**

No. 4913.

Court of Civil Appeals of Texas.
El Paso.

March 11, 1953.

Rehearing Denied April 29, 1953.

Second Rehearing Denied June 3, 1953.

Perkins, German, Mims & Bell, Midland (W. P. Z. German, Jr., and William H. Crenshaw, Midland, of counsel), for appellants.

Bezoni, Barton & Saxe and Edwin T. Stitt, Midland, for appellees.

McGILL, Justice.

This is an appeal from an order of the District Court of Midland County, 70th Judicial District, overruling a motion for new trial in a case in which appellees as plantiffs recovered a judgment against appellants as defendants for some twenty thousand dollars. Originally there were three defendants in the cause, appellants, E. B. Young and Acme Plumbing & Heating Company. On motion of appellants the court granted a severance as to defendant Acme Plumbing & Heating Company, and ordered the defendants Jones Butane Service and E. B. Young to proceed to trial, but during the trial, on motion of appellees the defendant E. B. Young was dismissed from the case and appellants were the only remaining defendants.

The suit was for damages to a house, and for personal injuries as the result of an explosion of butane gas under the house, which occurred on July 23, 1949. Trial was to a jury, and on findings favorable to plaintiffs the court rendered judgment for $6,000 as damages to the house, and for

$14,000 as damages for personal injuries to the plaintiff, Una C. Elliott.

We are confronted at the outset with a motion by appellees to dismiss the appeal. This motion was filed on September 6, 1952, and was passed for consideration with the case. The grounds of the motion are that the appellants did not file their appeal bond within the time prescribed by the Rules of Civil Procedure. Rule 356 R. C. P. provides that "the bond shall be filed * * * within thirty days after the date of rendition of judgment or *order overruling motion for new trial.*" (Emphasis ours.)

█ Rule 353(a) R. C. P. provides that notice of appeal may be given in open court or in the order overruling the motion for new trial. Rule 330(k) provides that motion for new trial shall be filed within ten days after judgment is rendered and may be amended by leave of the court within twenty days after it is filed, and Rule 330 (j) provides that all motions and amended motions for new trials must be presented within thirty days after the original motion or amended motion is filed, and must be determined within not exceeding 45 days after the original or amended motion is filed. Appellants literally complied with these rules. The judgment was rendered on May 7, 1952. The original motion for new trial was filed on May 17, 1952, and the amended motion for new trial was filed on June 6, 1952. On June 11, 1952, the court overruled defendant's "motion for new trial" which obviously refers to the first amended motion for new trial because it refers to supporting affidavits, and this is the only motion in the transcript which has any supporting affidavits. Defendants excepted and gave notice of appeal in the order overruling the motion for new trial. They had previously given notice of appeal in the judgment rendered on May 7, and it is appellants' contention that they were required to file their appeal bond within thirty days from that date. They did not file their appeal bond until July 1, 1952, which was within thirty days from the notice of appeal given in the order overruling the motion for new trial. The fact that in the judgment rendered May 7, 1952, appellants excepted and gave notice of appeal is immaterial. This notice was abandoned and superseded by the notice given in the order overruling the motion for new trial of June 11, 1952, and the time in which appellants were required to file their appeal bond began to run from that date. Dittman v. Model Baking Co., Tex.Com. App., 271 S.W. 75; McDonald, Texas Civil Practice, Vol. 4, p. 1507, Sec. 18, 31.

The motion to dismiss is overruled.

Appellants have briefed twenty-four points. Their twenty-third point asserts that the court erred in refusing to hear oral testimony of two jurors as to jury misconduct, proffered by appellants in open court on the day set for the hearing on their first amended motion for new trial, as required by Rule 327. The material misconduct alleged in their first amended motion is that upon their deliberation the jury discussed and considered that these defendants carried insurance against loss by reason of liability in a case like this, notwithstanding there was no evidence at the trial to that effect, and no insurance company was a party to the suit; that they discussed and considered that their answer to Special Issue No. 2 was controlled and governed or should be materially influenced by some one or more sections, paragraphs, sentences or other portions of a booklet entitled Gas Utilities Docket No. 141 other than the portions of such booklet given them in charge by the court, if in fact such portions were so given them in the charge; that one or more of the jurors agreed with one or more of the other jurors that if such other jurors would answer Special Issue No. 2 "Yes" such agreeing jurors would reduce the cash figure which the jury had already determined as its answer to Special Issue No. 8, and such agreement was consummated; that one or more of the jurors after having determined that upon the basis of the evidence and of the law given them in charge their answer to Special Issue No. 2 was "No", agreed with one or more of the other jurors that they would agree to a "Yes" answer to Special Issue No. 2 regardless of their predetermination to answer such special issue "No" upon condition that such other juror or jurors would agree to reduce the cash settlement which

had already been determined by the jury as its answer to Special Issue No. 8, and such agreement was consummated; that they discussed, considered and were influenced by a belief that plaintiffs' attorneys had a contract or other arrangement with plaintiffs whereby such attorneys would become entitled to a large share of any recovery made by plaintiffs in this case; that they discussed, considered, and in reaching their verdict some or all of them were influenced by a consequent belief that regardless of the evidence and the law given them in charge by the court, Una C. Elliott was entitled to cash damages for sole reasons that an explosion had occurred and she was involved in it, and some or all of said jurors believed that since they had determined to answer Special Issue No. 6 "No" unless they answered Special Issues No. 2 and 3 "yes", Una C. Elliott would not be entitled to recover a judgment, and such considerations were used in answering Special Issues Nos. 2 and 3 "yes"; that they discussed and considered that the plaintiffs were entitled to a judgment for damages notwithstanding instruction of the court that in reaching their verdict they were not to be concerned as to what the judgment should be; that they discussed, considered, and in reaching their verdict some or all of them were influenced by a consequent belief that the plaintiffs were entitled to recover a judgment for damages against these defendants, and that in order to enable the court to render such a judgment it was necessary that Special Issue No. 2 be answered "yes" notwithstanding instructions of the court that in reaching their verdict they were not to be concerned as to the amount the judgment should be; that they discussed, considered, and in reaching their verdict some or all of them were influenced by the belief that in answering Special Issue No. 2 "yes" the plaintiffs would become entitled to a judgment, whereas if they answered Special Issue No. 2 "no" the plaintiffs would not be entitled to a judgment. The defendants attached to and made a part of their motion for a new trial an affidavit by one of the jurors, C. W. Post, which we think it necessary to reproduce in full:

"Affidavit.

"On the day and year hereinafter indicated, before me, the undersigned, a Notary Public in and for Midland County, Texas, personally appeared C. W. Post, known to me to be such person, who after having been duly sworn upon oath, stated:

"I was selected, sworn, and I served as a juror in the trial of Cause No. 6081, Una C. Elliott, et vir, vs. Acme Plumbing and Heating Company, et al, in the District Court of Midland County, Texas, which was tried commencing on the *31st* day of *March, 1952*.

"During the deliberations of this jury, there was a general discussion concerning whether or not Jones Butane Service carried insurance against loss by reason of liability in a case like this and, judging from the statements of most of the jurors, it seemed to be the opinion that the Joneses had insurance at the time the explosion took place. I just naturally assumed that they were insured.

"During the discussions in the Jury Room, some one or more of us decided to ask for the book containing the Rules and Regulations of the Railroad Commission. This was when we were first talking about Special Issue No. 2, and someone said that the law, according to the Railroad Commission's Rule, required that the system had to be checked before putting in the gas. So, we asked for the book, and the Deputy Sheriff brought it to us. We were not told by any one just what part of the book we should look at, and one or two members of the jury began looking through the booklet. Some of the jurors looked through the whole book to try to find whether it said anywhere that the butane system must be tested just before putting gas in it. These fellows found something in this book that they thought applied to the case, and each time they would read that part. We finally skipped No. 2 and 3, and went on to the rest of the issues, and then, when we came

back to Issue No. 2, some of the jurors began reading these rules in the booklet, and one of them said, 'Well, if that's the way it is, then I'll go with you.' The jury was then ten to two in favor of answering that issue, 'Yes'. After some argument, some of the men brought out the rule book again, and said, 'How can you answer this question any other way? If that is the law, then there is just no two ways about it, that's negligence, they failed to obey the law, and it is written there, and if you are in the business, you ought to know it, you ought to know what the Rules and Laws are; and so, there is just no two ways about it.' There were several places in the book that were read out loud, and one of them was where it says that after gas cocks are installed the piping shall again be tested at five pounds air pressure for a period of fifteen minutes. I would not have answered Special Issue No. 2, 'yes', if we hadn't gotten the book with the Rules and Regulations of the Railroad Commission in it.

"During the time that we were discussing Special Issue No. 8, the foreman of the jury, or someone else, had us each decide what we thought would represent a reasonable salary per month for Mrs. Elliott to replace her monthly income, and these amounts, which were different, were added together, and the total was then divided by twelve, and the result was multiplied by the number of years, in months, which we decided Mrs. Elliott would have been able to earn an income, had she not been injured in the explosion, assuming she was injured. We added in the total amount of the Doctor's, Hospital, Drug and other bills, and the total was the way we first arrived at this answer. After we had answered No. 8, we came back to Issue No. 2, and some of the jurors still felt that No. 2 should be answered, 'no'. Finally, there were just two of us who thought that 'no' was the proper answer to Issue No. 2, and so it was proposed by some of the jurors that since the

two of us also felt that the answer to No. 8 was too high, if we would answer No. 2, 'yes', they would agree to reduce the dollars answer to No. 8. This proposal was finally agreed to even though two of the jurors said that they would not answer Issue No. 2, 'yes', or agree that the foreman could put the answer, 'yes', to No. 2, unless the cash figure in answer to Issue No. 8 was reduced considerably.

"We talked about how much the attorneys would receive from any amount of judgment that the Elliotts obtained. Some of the jurors stated that the attorneys would probably get one-third, and some of the other men thought they might get one-half. Most of this discussion took place while we were talking about what our answer to Issue No. 8 should be.

"During the discussion of the jury, there was a lot of talk about whether or not the Elliotts were entitled to recover damages against anybody, and several of the jurors stated that they thought the Elliotts were entitled to get something out of the case regardless of whose fault it was. Some of them said that there was damages due to the plaintiffs by somebody, and since the Joneses were the only people in the case, why they were the people to take care of it. After we had answered Special Issue No. 6, 'yes', one of the jurors said that, if we did not answer No. 2, 'yes', then we would defeat the possibilities of the Elliotts having any judgment at all, and this same juror, and others, said that the plaintiffs were entitled to something, that they should be paid something, and that Issue No. 2 should be answered so that they could get something. Some of the jurors expressed the opinion that, if they did not answer Special Issue No. 2, 'yes', that would kill all the rest of the vote, and the Elliotts would not be able to get a judgment. Some of the jurors said that they thought Mrs. Elliott was entitled to something for going through that explosion. When all of this discussion

was taking place, the jury was talking about Special Issue No. 2, and, at times, about Special Issue No. 3 also.

"During the deliberations of the jury, there was considerable discussion of whether or not Mrs. Elliott had lied on the witness stand, and at least two of the jurors stated that they thought she had lied about her health and about whether she had been in the hospital from 1936 until 1949. Most of the jury seemed to agree that she had not told the truth about some of these things, and some of them stated that they did not believe the Joneses when they said that they had tested the system when they installed the tank and yard line. Some of the jurors seemed, from their conversation, to believe that, since Mrs. Elliott had purjured herself, the Joneses had probably done the same thing.

"There was considerable discussion among the jurors to the effect that the definitions of negligence and proximate cause were not understandable and that the questions, especially Special Issues No. 2 and No. 3, were worded in such a way that a definite answer was difficult. Some of the jurors decided that, since they couldn't understand these questions, and especially Issue No. 2, they would find out what the Rules and Regulations of the Railroad Commission were by reading the booklet, and would answer either one or both of these issues in accordance with what the book said. The truth of the matter is, that I don't believe anyone on the jury understood Special Issue No. 2, and I believe, judging from their statements, that some of the jurors answered Issue No. 2, 'yes', because they decided that the Rules and Regulations of the Railroad Commission contained in the little book required a Butane Dealer to test the system immediately before injecting butane into it.

"One of the jurors said that he thought, from his experience, that the law required a man to test the butane system before putting butane in it.

"In discussing the matter of general liability; we talked about Acme Plumbing and Heating Company, and most all of the members of the jury stated that they thought Acme was really the responsible party, but that since Jones Butane Service was the only company in the case at that time, it should be the company to take care of the damage.

"C. W. Post
C. W. Post

"Sworn To And Subscribed Before Me, the undersigned authority, on this the 6th day of June, A. D. 1952.

"Janice Morrison
Janice Morrison, Notary Public, in
and for Midland County, Texas."

"(Seal)

In support of their motion for new trial the defendants offered the testimony of juror C. W. Post and of another juror, but the court refused to hear any evidence from these jurors, or from the other ten jurors who had been subpoenaed on behalf of plaintiffs, and refused to permit the defendants to perfect a. bill of exceptions by showing what testimony the jurors proffered by him would give. We think under the rules laid down in Roy Jones Lumber Co. v. Murphy, 139 Tex. 478, 163 S.W.2d 644, (Com.App. opinion adopted), the court erred in refusing to hear testimony of the jurors proffered by appellants in support of their first amended motion for new trial. In view of the allegations of their first amended motion for new trial, and of the affidavit of juror Post, it appears to us that the "circumstances were such as to apprise the trial court that the allegations of the motion constituted something more than a mere idle hope on the part of the movants that they might be able to uncover erroneous misconduct if permitted to examine the jury". In other words, that the motion with the accompanying affidavit constituted more than a mere fishing expedition. Therefore, unless other error is shown, in conformity with the procedure followed in the cited case, the order overruling the defendant's first amended motion for new trial should be reversed and the cause remanded to the trial court with

instructions to hear evidence upon the allegations of the amended motion of appellant Jones Butane Company, for new trial insofar as relates to jury misconduct only. Therefore it becomes necessary for us to consider appellant's other points to determine of other error is shown, since if the court should have granted a new trial on some other point, his error in refusing to hear evidence as to jury misconduct would become immaterial.

Appellant's first point is that the court erred in overruling defendant's exceptions 1–a, b and c, to plaintiff's first amended original petition because the petition showed on its face that defendants were not liable to plaintiff. Specifically the negligence of the defendant are acts of omission, or non feasance, for which defendant is not liable to plaintiffs because plaintiffs alleged:

"that the defendant Jones Butane Service, for and on behalf of the general contractor E. B. Young installed a 215 gallon butane tank in the yard about 39 feet from the said house and connected to the above mentioned interior system at a point twelve inches outside of said house."

Under this point appellants argue that the evidence amply demonstrates that they were independent contractors and that the work which they performed had been completed and accepted by the general contractor two months before the explosion. We think these facts do appear from the uncontroverted evidence. Appellants contend that no cause of action was alleged or proved against them in view of this pleading and evidence. A determination of this point is necessary to a proper disposition of this appeal as it goes to the foundation of plaintiff's cause of action, and if decided favorably to appellants would require a reversal of the judgment, regardless of the error of the trial court in failing to hear evidence on the motion for new trial.

We think the point is without merit and should be overruled. In paragraph 4 of their first amended petition plaintiffs allege that after installation of the butane tank by defendants and before defendants placed butane in the tank and turned it into the line to the house a terrific rain caused the tank to float in the open pit in which it had been installed, and made it necessary for defendants to readjust the tank and do certain other adjustments in order to place the butane system in operation, and that these facts were known to defendants at the time the fuel was placed in the system, also it did adjust the connection with the stove and the gas heater in the bath room. The evidence was sufficient to support these allegations.

The jury found (1) that defendants failed to test the butane gas system immediately prior to injecting butane gas into the system; (2) that such failure was negligence; and (3) which was a proximate cause of the explosion. In Community Natural Gas Co. v. Lane, Tex.Civ. App., 97 S.W.2d 703, loc. cit. 706 the rule is stated:

"Where the escape is from pipes on the premises of a consumer, the rule generally accepted by the authorities is that, absent any obligation imposed by contract, regulation, custom, or franchise (which is the case here), 'a gas company which does not install pipes in the consumer's building and has no control over them is not responsible for their condition, maintenance, or defective installation, nor for injuries caused by gas escaping from a leak therein, of which it has no knowledge.' 90 A.L.R. 1088, note."

While this case was reversed by the Supreme Court, 133 Tex. 128, 123 S.W.2d 639, the rule stated by the Court of Civil Appeals was recognized; Texas Public Service Co. v. Mireles, Tex.Civ.App., 149 S.W.2d 298, loc. cit. 301 (wr. dis. judgment correct). Annotations to the same effect appear in 25 A.L.R. 272; 29 A.L.R. 1252; 47 A.L.R. 488; 90 A.L.R. 1088 and 138 A.L.R. 874 and 879. See also 38 C.J.S., Gas, § 42, p. 735; and Sawyer v. Southern Calif. Gas Co., 206 Cal. 366, 274 P. 544. 546, where the court said:

"It is not in all cases a sufficient answer to a claim of liability against a gas company that the cause of the escape and explosion of gas is to be

found in the condition of the house pipes, which the gas company does not own or control. There are well-considered cases of other jurisdictions to the effect that a gas company may be liable where it either directs its employes to turn on a gas meter, or authorizes the person applying for gas to turn it on, and an explosion occurs by reason of an escape of gas through a house pipe 'connected with the meter which was uncapped or severed at the time the meter was turned on. Christo v. Macon Gas Co., 18 Ga.App. 454, 89 S.E. 532; Schmeer v. Gas Light Co., 147 N.Y. 529, 42 N.E. 202, 30 L.R.A. 653; Hayes v. Cohoes Gas Light Co., 183 App.Div. 182, 170 N.Y.S. 312; Swayzee v. City of Augusta, 113 Kan. 658, 216 P. 265; Hebert v. Baton Rouge Electric Co., 150 La. 957, 91 So. 406, 25 A.L.R. 245."

The allegations in paragraph 4 of plaintiff's first amended original petition were sufficient to take the case out of the general rule above quoted, and the proof was sufficient to support such allegations. Therefore, the court did not err in overruling defendant's special exceptions 1–a, b and c to plaintiff's first amended original petition.

The second point complains of the action of the court in permitting plaintiff's counsel to read to the jury that portion of the pleading pertaining to acts of negligence of the defendant Acme Plumbing & Heating Company after the court had granted a severance as to this defendant. We decline to consider this point because there is nothing in the record to show that the action complained of occurred, or that any exception thereto was taken, therefore there is nothing before us to pass on.

The third point asserts error in the court's admission of testimony concerning the piping in and under the house except as to the spacing of the hangers supporting such pipe, because the Acme Plumbing & Heating Company which installed such piping had been severed from the case. If we are correct in our holding that there was a duty on the defendant, Butane Service, to inspect, then certainly evidence as to what such inspection would have revealed was admissible.

The fourth point complains of the court's action in permitting appellee Donald Elliott to testify that he believed he and his wife were safe in the house the night of the explosion, because such testimony was an appraisal of the mental processes of the witness. If this testimony were inadmissible we cannot see how it could have possibly prejudiced appellant. It merely expresses an obvious truism, since it must be conceded that appellees would not have gone to bed and sleep in a house which they thought was unsafe and might be blown up by an explosion.

The fifth point assigns error in the court's action in admitting the testimony of Harlan Howell that the property was worth from $1500 to $2000 the morning after the explosion, because the witness had disqualified himself to express such an opinion. Mr. Howell was an experienced realtor and builder, and was familiar with the property before the explosion. He had not seen it after the explosion until it was repaired. He was shown photographs of the property taken immediately after the explosion and asked this question:

"Q. I ask you to examine this. This is the same house. Plaintiff's Exhibit 1. Look at that. Plaintiff's Exhibit 3, Exhibit 2, Exhibit 5. I want you to hold those just a minute. Now, it is in evidence here that an explosion occurred in that house about midnight, shortly before midnight on July 23, 1949. That the house was blown loose from the foundation and turned slightly; that the bathroom walls were blown in; that certain other portions of the interior were blown in or out, as you prefer; that a hole was blown under the floor in the kitchen, I believe it was, and that the cause of that situation was the explosion of an accumulation of butane gas beneath the floor or in the walls as a result of some sort of leakage of butane under that house.

"Now, from that explanation of what has occurred, as testified to in this case, and from your views of those pictures which I have handed you showing the physical destruction to the outer portion of that house, as a real estate man, knowing the value of real estate in the City of Midland on July 23, 1949, what would you consider a reasonable cash market value of a house in that condition immediately following that explosion to be?"

His first answer was:

"I would say from looking at the pictures the property would have been— I would say from $1500.00 to $2000.00 would be all it was worth. Frankly, if I had been asked to sell the property for that I don't know whether I would have attempted it."

but on further questioning he said his opinion was *"based on what you told me and examination of these pictures."* (Emphasis ours.) Though not free from doubt, we think the testimony was admissible. There is no question but that it was vital to that portion of plaintiff's case which sought damages for the injury to the house which was caused by the explosion. Mr. Young's testimony did not touch on the value of the house after the explosion. We think the qualification of Howell went to the weight of his testimony rather than to its admissibility. The qualification of a witness is largely a matter of discretion for the trial court, and we think no abuse of discretion is shown. 19 Tex.Jur. p. 76, Sec. 50.

██ The sixth point complains of the court's action in refusing to permit the witness Harris, the chief engineer of the Gas Utilities Division, Railroad Commission of Texas, who admittedly had the responsibility of promulgating and enforcing the rules and regulations of the Commission, to testify on redirect examination as to the interpretation placed upon the rules and regulations of the Commission during the year 1949, after such witness had been permitted over appellant's objection to testify as to the existence of such rules, and that he was charged with their promulgation and enforcement. The rules and reg-

ulations of the Railroad Commission are in writing, and when unambiguous their interpretation is for the courts. Dallas County Fresh Water Supply Dist. No. 7 v. Mercantile Securities Corp., Tex.Civ.App., 110 S.W.2d 187 (wr. dismissed); 27 Tex.Jr. p. 412, Sec. 4; Texas Law of Evidence, McCormick & Ray, p. 14, Sec. 9; Texas Co. v. Grant, 143 Tex. 145, 182 S.W.2d 996.

What we have said in connection with the first and fifth points and shall say as to the eighth point we think is sufficient to dispose of the seventh point, which is that the court erred in overruling appellant's motion for a directed verdict. This also applies to the seventeenth, eighteenth, twentieth, twenty-first and twenty-second points.

██ The eighth point we regard as almost frivolous. It is that the court erred in submitting the case on special issues, and in rendering judgment against appellant because appellees perjured themselves before the jury. The perjury relied on was the testimony of appellees that appellee Una C. Elliott had been in good health from 1935 to the date of the explosion, whereas appellant's witness Dr. D. D. Cross testified that Una C. Elliott had been hospitalized in 1941 and that he had treated her at numerous times from 1935 through 1941 for some of the ailments of which she complained in this suit. Certainly appellee's credibility, as well as that of the doctor, was for the jury.

██ The ninth point is that the court erred after the jury retired by permitting them to be supplied with a copy of Gas Utilities Docket No. 141, containing all the rules and regulations of the Railroad Commission governing liquified petroleum gases, and to consider all such rules when only two of such rules were in issue (evidence). It does appear from the affidavit of juror Post, above quoted, that Docket No. 141 was brought to the jury room by a Deputy Sheriff. He swore that the jury asked for the book and it was brought to them by a Deputy Sheriff. This is the only reference in the record to the alleged jury misconduct in having Docket 141 in the jury room. It does not appear that the court had anything to do with its

getting there. The trial judge has filed an affidavit in this court to effect that Docket 141 was delivered to the jury by agreement of the parties. However, we regard this as no part of the record and we cannot and do not consider it. Regardless of how the docket got into the jury room, unless the parties waived its consideration by the jury a new trial should have been granted if it were made to appear that the verdict was probably influenced by its consideration. Triangle Cab Co. v. Taylor, Tex.Civ. App., 190 S.W.2d 755, loc. cit. 761 (14), affirmed 144 Tex. 568, 192 S.W.2d 143; 31 Tex.Jur. p. 47, Sec. 40. This was a matter which related to jury misconduct. The only references to it are found in the XV and XVI paragraphs of defendant's first amended motion for a new trial. The XV paragraph complains of the court's permitting the docket to be taken to the jury room without consent of defendant's counsel. We have shown that these allegations find no support in the record. The XVI paragraph is as follows:

"The jury was guilty of misconduct in that upon their deliberation in reaching their verdict, they discussed, considered, and, in reaching their verdict, some or all of them were influenced by a consequent belief that their answer to Special Issue No. 2 was governed not by the law given them in charge by the Court, nor by the evidence admitted for their consideration, but by the following language contained in Gas Utilities Docket No. 141, Division VII, page 61:

'After gas cocks are installed the piping shall again be tested at 5 lbs. air pressure for a period of 15 minutes during which time there shall be no loss of pressure.'"

We think this assignment is insufficient to have pointed out to the trial court that appellant was complaining of the jury's consideration of the document because it improperly found its way into the jury room, therefore we cannot pass on this question. However, on a hearing on the motion insofar as it relates to jury misconduct, this matter will undoubtedly be clarified.

The tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth and sixteenth points which relate to jury misconduct have been sufficiently discussed in our disposition of the 23rd point.

The nineteenth point is disposed of by our discussion and disposition of the first point.

The twenty-fourth and last point is that the court erred in overruling appellant's option to correct the order overruling defendant's "motion for a new trial" because of a misrecital therein, as provided by Rule 317, T. R. C. P. There can be little doubt that the order complained of refers to defendant's first amended motion for a new trial, which was filed June 6, 1952, since it refers to the supporting affidavit, and defendant's motion for a new trial filed May 17, 1952 is not supported by any affidavit. Appellant also complains because the order failed to recite the timely filing of the original motion, and of the first amended motion, and that the latter was presented to the court in due time, and fails to recite appellee's oral objection to the motion and the court's action thereon. Under Rule 373, T. R. C. P. formal objections to rulings or orders of the court are unnecessary. It is sufficient if the complaining party at the time of the ruling or order makes known to the court his objection to the court's action. The Statement of Facts on appellant's motion for a new trial shows that defendant did except to the court's action in refusing to hear evidence on its motion. This was sufficient to preserve the point, and we have considered it. No question is raised that either the original motion or the first amended motion was not timely filed. In any event, these matters will probably not occur on a hearing of defendant's first amended motion for a new trial.

All of appellant's points except the twenty-third, which is sustained, and the second and ninth points, which we cannot pass on, are overruled, and following the procedure prescribed in Roy Jones Lumber Company v. Murphy, supra, it is ordered that the court's order overruling defendant's motion for a new trial be and it is hereby reversed and the cause is re-

manded to the trial court with instructions to hear evidence upon the allegations of defendant's first amended motion for a new trial, insofar as it relates to jury misconduct only, and if he determines that the same occurred and that it presents reversible error, he will order a new trial; otherwise he will overrule said first amended motion and his original judgment will stand in all things as originally entered, since no other point of error shows any reversible error.

Reversed and remanded with instructions.

On Appellant's Motion for Rehearing.

■■■■ Most careful consideration has been given to appellants' motion for rehearing. We agree with appellants' contention that there was no evidence to support the allegations of paragraph 4 of plaintiffs' first amended original petition to effect that defendants had notice that the terrific rain had caused the tank to float in the open pit, or that they adjusted the tank. However, we have concluded that the evidence was sufficient to support the jury's finding that defendants' failure to test the butane gas system immediately prior to injecting butane gas into the system was negligence. Plaintiffs alleged and the evidence was sufficient to show that several weeks had elapsed between the time when defendants installed the butane system and the time when plaintiffs moved into the house and defendants turned on the butane gas. In fact, the evidence shows that at the time defendants installed the system the house was not entirely completed, and several people were still working around it. Defendants were dealing with a highly dangerous substance and were bound to exercise a degree of care commensurate with the danger of the gas escaping and causing injury or damage to the person or property of others. Lane v. Community Natural Gas Co., 133 Tex. 128, 123 S.W.2d 639. Under such circumstances, apart from any regulation of the Railroad Commission, we cannot say that it was entirely unreasonable for a jury to find that defendants were negligent in not making a test of the system before they turned on the gas. They knew that they had made no inspection since they installed the system, and there is no evidence to show that anyone else had made such inspection. The situation is somewhat different from that where gas has been turned into a system and has been turned off and is again turned on. In the present case it was the first time the gas has been turned into the system.

Our original opinion is modified as herein indicated, and appellants' motion for rehearing is overruled.